IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| John Doe, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-04198-DCN |
| | ) | |
| The Citadel, The Military College of South | ) | |
| Carolina; Glenn M. Walters, in his official | ) | |
| capacity at The Citadel; Valerie Mercado, in her | ) | |
| official capacity at The Citadel; and Janet | ) | |
| Shealy, in her official capacity at The Citadel, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

AND NOW COME Defendants The Citadel, The Military College of South Carolina ("The Citadel"), Glenn M. Walters, in his official capacity at The Citadel ("Walters"); Valerie Mercado, in her official capacity at The Citadel ("Mercado"); and Janet Shealy, in her official capacity at The Citadel ("Shealy") (collectively "Defendants"), by and through their undersigned counsel, and file the following Memorandum in Support of their Motion to Dismiss:

## BACKGROUND

For purposes of this Motion only, Plaintiff John Doe ("Plaintiff") has made the following allegations in his Complaint in this matter:

Plaintiff John Doe ("Plaintiff") alleges that he was a scholarship cadet at The Citadel. (*See Docket Entry # 1 ¶¶ 1 & 74*). Jane Roe was a friend in his class at The Citadel starting with their freshmen year (the 2018-2019 academic year). (*See id. ¶ 74*). Jane Roe told Plaintiff that she was gay and had a girlfriend. (*See id. ¶ 74*). He alleges that at the start of his sophomore year, he swore into the United States Marine Corps, which he would enter into following graduation. (*See id. ¶ 75*). When he asked Jane Roe why she did not do that, he was received with some hostility. (*See id. ¶ 75*).

On October 18, 2019, Jane Roe filed a complaint with The Citadel, complaining about Plaintiff flirting with her the prior school year and accusing him of three incidents:

- One alleged incident occurred at Jenkins Hall when John Doe assaulted her by grabbing her wrists, twisting them across her chest and forcing her against a wall. Jane Doe allegedly said that another cadet ("Sha") witnessed this incident.

- The second alleged incident occurred at the Mess Hall when Plaintiff asked her why she was being rude to him. She told Plaintiff to stay away from her; however, when Plaintiff reached in front of her to get a drink, he rubbed against her.

- The third alleged incident occurred at the Law Barracks Sally Port. In that incident, Plaintiff allegedly grabbed her buttocks and rubbed his front against her back, while she was on duty with a female cadet friend "Er."

(*See id.* ¶ 76). John Doe denied these accusations in writing. (*See id.* ¶ 77).

He noted Jane Roe had told him she was gay but that they were friends. (*See id.*). He denied being alone in Jenkins Hall with Jane Roe. (*See id.*). He further denied the alleged incident at the Law Barracks Sally Port; he was requested surveillance footage to show that the accusation was not true. (*See id.*). Knowing that John Doe obtained video surveillance footage from Sally Port, Jane Roe allegedly changed the date of the incident at that location to on or about September 12, 2019. (*See id.* ¶ 78).

On November 18, 2019, a Commandant's Board was convened, consisting of LT COL Joel Fortenberry (President), LT COL Christopher Polites (Member), Cadet Captain Hannah Jalbert (Member), and Commander Kevin Adcock (Recorder), who was Jane Roe's Battalion TAC Officer for the 2018-2019 school year. (*See id.* ¶ 79). Plaintiff alleges that witnesses at that Board were not sworn under oath. (*See id.*). He further alleges that the Board permitted Jane Roe to cross-examine some of his witnesses and that Jane Roe used questions furnished to her by Defendant Shealy (who did not give Plaintiff any questions). (*See id.* ¶ 80). The Commandant's Board found that Plaintiff had engaged in the alleged conduct and dismissed Plaintiff "with leave to apply for possible readmission after one year" by The Citadel. (*See id.* ¶ 1).

Plaintiff's complaint focuses on evidence that he contends supports his innocence. Plaintiff alleges that cadet "Rya" was a witness to the incident at Jenkins Hall, and said that Plaintiff never

entered that building.  (*See id.*).  That Cadet denied ever seeing Plaintiff physically contact Jane Roe.  (*See id.*).  He further alleges that Jane Roe aimed to undermine Cadet "Rya's" testimony. Cadet "Er" said that Plaintiff did rub his front side against Jane Roe's backside, but she did not see Plaintiff *grab* Jane Roe's backside, contradicting Jane Roe's allegation.  (*See id.*).  Jane Roe testified that, when Plaintiff grabbed her back side, she said "What the Hell"; however, Cadet "Er" testified that she did not hear Jane Roe say anything.  (*See id.*).  Cadet "Noa" stated that Plaintiff was at the Marine lab from 16:00-18:00, making it improbably that Plaintiff was with Jane Roe by 18:00.  (*See id.* ¶ 81).  Cadet "Sha" said that Plaintiff did not go into Jenkins Hall; he also said that he did not think Plaintiff would assault Jane Roe.  (*See id.*).  Jane Roe gave an unsworn account of the three alleged incidents; when Plaintiff's representative asked Jane Roe about "false memory," the Board President cut off questioning.  (*See id.*).

John Doe presented his case, starting with his own account, in which he denied: (a) entering Jenkins Hall; (b) the alleged Mess Hall incident; and (c) making contact with Jane Roe at the Law Barracks Sally Port.  (*See id.* ¶ 82).  As to the third incident, Plaintiff allegedly stated that — because he was coming from a Marine lab — his hands were full and he could not have groped Jane Roe.  (*See id.*).  He claims that Jane Roe changed the date of that incident from early October to September 12, 2019, when video footage of the Sally Port was not available.  (*See id.*). Character witnesses testified that Plaintiff would not have engaged in the alleged behavior.  (*See id.*).

The Commandant's Board issued its decision on December 18 2019.  (*See id.* ¶ 83).  It ruled that it was more likely than not that Plaintiff committed an act of sexual violence in non-consensual physical contact of a sexual nature by rubbing his front side against the backside of Jane Roe at the Law Barracks Sally Port.  (*See id.*).  Plaintiff alleges that this decision was purportedly based on judging Jane Roe and her female friend more credible than John Doe and his corroborating witnesses.  (*See id.*).  He alleges that this credibility determination was contrary to: (i) Jane Roe's changing of the date of the Sally Port incident; (ii) the difference between Jane Roe's description of the incident (groping) and what the Commandant's Board found occurred (rubbing up against);

(iii) the non-acceptance of two of the three accusations made by Jane Roe; (iv) Plaintiff's denial of all accusations; (v) Plaintiff's witnesses who denied that he engaged in the incidents and that they ever saw Plaintiff engage in sexual harassment toward Jane Roe; and (vi) Plaintiff's character witnesses. (*See id.* ¶ 84). Plaintiff claims that the Commandant's Board engaged in a "believe the woman" gender bias. (*See id.*).

On January 17, 2020, Plaintiff timely appealed, asserting: (i) that he would be presenting testimony from two additional cadets who were on guard duty on September 12, 2019 and who would refute Jane Roe's story; (ii) Defendant Shealy did not provide a level playing field, as she was assisting Jane Roe; (iii) there was a conflict of interest because Commander Adcock was the Board's recorder *and* Jane Roe's Battalion TAC Officer for the 2018-2019 year; and (iv) there was a denial of due process stemming from the change in date of the Sally Port incident. (*See id.* ¶ 85). On February 3, 2020, John Doe's appeal was allegedly denied for the following reasons:

(i)     Plaintiff should have presented the new testimony before and such evidence would not have changed the Board's decision;

(ii)    Defendant Shealy acted in keeping with CARE's mission;

(iii)   Commander Adcock, as recorder, was a non-voting member of the Board; and

(iv)    The Board followed its rues and relied upon eyewitness testimony of Cadet "Er" in reaching its decision.

(*See id.* ¶ 86). Plaintiff alleges that these stated grounds were without merit. (*See id.* ¶ 87).

Plaintiff alleges that , since the disciplinary decision, he has worked in security; however, his disciplinary record at The Citadel is following him around. (*See id.* ¶ 88). He claims that he has had to explain The Citadel disciplinary case to other schools to which he has sought admission and that it is causing him to lose employment opportunities. (*See id.*). He alleges that he has been suffering from ongoing injury from the disciplinary decision, which he contends was discriminatory and rendered without proper constitutional due process. (*See id.*).

Plaintiff filed this lawsuit against Defendants The Citadel, Walters, Mercado, and Shealy.[1] He has sued the individual Defendants only in their official capacities at The Citadel. (*See generally* Docket Entry # 1). Plaintiff's Complaint sets forth the following causes of action:

(a) ***First Cause of Action:*** 42 U.S.C. § 1983 Denial of Fourteenth Amendment Due Process) against Defendants Walters, Mercado, and Shealy

(b) ***Second Cause of Action:*** Violation of Title IX of the Education Amendments of 1972 against Defendant The Citadel)

For the reasons that follow, the Court should dismiss Plaintiff's claims in this matter.

## ARGUMENTS

### A.    Governing Legal Standards

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Amended Complaint, and such a motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The court can dismiss a case pursuant to FRCP 12(b)(6) "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id*. at 244. However, the Court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Id*.

Plaintiff's Amended Complaint must set forth "a short and plain statement ... showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell*

---

[1]    The body of Plaintiff's Complaint refers at least once to Joel Fortenberry as a "Defendant." However, Mr. Fortenberry is not listed in the caption and is not listed as a part on the ECF filing website. Moreover, Mr. Fortenberry is not listed on the waivers of service filed in this matter, and the Court has not issued a summons directed to him. (*See* Docket Entries ## 6 and 7). It is presumed that any referenced to Mr. Fortenberry as a "Defendant" in the Complaint is a scrivener's error.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).  To "show" that the plaintiff is "entitled to relief," the Complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While FRCP 8 marked "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," the change did not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 129 S. Ct. 1950.

"[E]lements of a cause of action" and "bare assertions" do not qualify as well pled facts, and the court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quotation marks and citations omitted). The court may take judicial notice of matters of public record and may also "consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State of Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (quotation marks and citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 1949 (*quoting Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet*, 591 F.3d at 256 (*quoting Iqbal*, 129 S. Ct. at 1952).

Under these standards, this Court must undertake a two-pronged approach to determining the sufficiency of Plaintiff's Amended Complaint.  First, while accepting as true all factual allegations in the Plaintiff's Amended Complaint, the Court must "segregate allegations that are factually supported from those which are mere legal conclusions or naked assertions and not entitled to a presumption of truth." *In re § 1031 Exchange Litigation*, 716 F.Supp.2d 415, 421

(D.S.C. 2010); *Iqbal*, 129 S. Ct. at 1950.  Second, after removing the mere legal conclusions and naked assertions, the Court "must determine whether the remaining factual allegations in the complaint state a plausible claim for relief, based on 'judicial experience and common sense.'"  *Id*.

For the reasons that follow, Plaintiff's Complaint fails to set forth claims upon which relief may be granted against Defendants.

**B.**     **The Court Should Dismiss Plaintiff's First Cause of Action — 42 U.S.C. § 1983 Against the Individual Citadel Defendants.**

In his Section 1983 claims against the individual defendants (Walters, Mercado and Shealy), Plaintiff alleges the denial of due process in connection with the deprivation of a reputational liberty interest and a property interest in preserving the benefits of his education.  (*See* Docket Entry # 1 ¶¶92-93).  Plaintiff alleges that, as a consequence of the existence of these interests, he was "entitled to fundamentally fair procedures to determine whether he was responsible for the alleged sexual misconduct."  (*See id.* ¶ 94).  He further alleges that the individual Defendants invaded his "due process rights through their deprivation of the minimal requirements of procedural fairness by employing a process in which there was no presumption of innocence but rather a presumption that the accusations were true, there was no real adherence to a burden of proof, and thus there was an effective discretion to engage in discriminatory decision-making."  (*See id.* ¶ 95).  He additionally alleges that the individual Defendants were "pressured by the Obama Administration's DOE into following the Title IX investigative and adjudicatory process mandated by the April 2011 Dear Colleague Letter regardless of what otherwise would be due process considerations."  (*See id.* ¶96).

In this cause of action, Plaintiff seeks the following relief vis-à-vis the individual Defendants:

> [A] judgment against Defendants Walters, Fortenberry [(sic)], and Shealy awarding John Doe an injunction ordering the vacating of the dismissal with no readmission requirements, vacating Plaintiff John Doe's disciplinary findings and decision, granting expungement of the disciplinary record from Plaintiff John Doe's school records at The Citadel  . . .

(*See id.*, at 38 (Prayer for Relief)).  Plaintiff alleges that the individual Citadel Defendants are proper defendants in an injunction claim under Section 1983 for the following reasons:

> 85.[(sic)] Defendant General Glenn M. Walters is the President of The Citadel and is an appropriate person to be subject to injunctive relief for violations of due process; in his official capacity, he is responsibility (sic) for The Citadel's and (sic) operations as an educational institution of higher learning, which includes compliance with federal and state laws and court decrees specific to The Citadel, including any expungement of a disciplinary record.

> 104.    Defendant Valerie Mercado is the current Title IX Coordinator at The Citadel and is an appropriate person to be subject to injunctive relief for violations of due process, including any expungement of a disciplinary record.

> 105.    Defendant Janet Shealy is the Director of CARE and is an appropriate person to be subject to injunctive relief for violations of due process, including any expungement of a disciplinary record.

(*See* Docket Entry # 1 ¶¶ 85(sic), 104, 105).

For the reasons that follow, the Court should dismiss Plaintiff's Section 1983 claim ("First Cause of Action") against Defendants Walters, Mercado and Shealy, with prejudice.

**1.    <u>Plaintiff's Section 1983 Claim Against the Individual Defendants to Prospective Injunctive Relief Because He Only Sues Them in Their Official Capacities; His Claim Fails Because the Relief He Requests is Retrospective.</u>**

Plaintiff's only claims against Defendants Walters, Mercado and Shealy sound under 42 U.S.C. § 1983 and are alleged against them in their "official" capacities.  (*See* Docket Entry # 1 ¶¶ 8-10).

The United States Supreme Court has unequivocally held that "neither a State nor its officials *acting in their official capacities* are 'persons' under § 1983."  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *accord DeCecco v. University of S.C.*, 918 F. Supp. 2d 471, 506 (D.S.C. 2013) ("[T]o the extent sued in their official capacity, the Smiths are entitled to the same immunity (Eleventh Amendment) as USC and are not "persons" subject to suit under Section 1983."); *Scott v. Ozmint*, 467 F. Supp. 2d 564, 570 (D.S.C. 2006) ("Plaintiff . . . is suing Ozmint only in his official capacity.  Therefore, it is recommended that Director Ozmint be dismissed entirely as a matter of law.").

However, "a state official in his or her official capacity, *when sued for injunctive relief*, would be a person under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 94 n.10 (1989) (emphasis added); *Ex parte Young*, 209 U.S. 123 (1908); *Lytle v Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (stating that *Young* authorizes "suit against state officers for prospective equitable relief from ongoing violations of federal law"). Plaintiff may only seek injunctive relief, not damages under Section 1983 with regard to the individual Defendants sued in their official capacities:

> When a defendant is sued in his official capacity, as in the case sub judice, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

*See Mickle v. Ahmed*, 444 F. Supp. 2d 601, 621 (D.S.C. 2006). Therefore, Plaintiff's First Cause of Action (Section 1983) is only permissible to the extent it seeks prospective injunctive relief as to Defendants Walters, Mercado and Shealy.

Here, however, Plaintiff's request for injunctive relief is purely *retro*spective. At its heart, his 1983 claim simply requests that an alleged past violation of his civil rights — which was a discrete act, which is not ongoing — be undone. The Fourth Circuit has prohibited claims against officials where the request relief is to undo a past decision or action:

> But when the essence is considered, the only presently effective relief sought for the violations claimed and conceded *is quintessentially retrospective: the voiding of a final state conviction and sentence*. That this could be effectuated in an injunctive or declaratory decree directed at state officials does not alter the inescapable fact that its effect would be to undo accomplished state action and not to provide prospective relief against the continuation of the past violation. Money damages are probably the purest and most recognizable form of retrospective relief, but surely not the only form, and the fact that that remedy is not sought whereas an injunctive or declarative form is, does not automatically establish that the *Ex parte Young* exception allows the action to proceed.

*See Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998); *accord Charnock v. Virginia*, No. 2:16-cv-493, 2017 U.S. Dist. LEXIS 172629, at *11-12 (E.D. Va. Jan. 4, 2017)

("Essentially, Plaintiff requests a declaration that Defendants' past orders and rulings were erroneous. . . . Such a request for retrospective relief is barred by judicial immunity.") (attached hereto as Ex. A); *Jemsek v. North Carolina Med. Bd.*, No. 5:16-CV-59-D, 2017 U.S. Dist. LEXIS 23570, at *26-27 (E.D.N.C. Feb. 20, 2017) ("Retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally-protected rights, does not fall within the exception.") (internal quotation marks omitted) (attached hereto as Ex. B).

Similarly, Plaintiff's requested injunction is "quintessentially retrospective." He asks the Court to "vacat[e]" his dismissal with no readmission requirements, "vacat[e]" the disciplinary findings and decision, and erase that dismissal from his record. In other words, he is asking the Court to "look back" at the disciplinary proceeding and compel that it be vacated. Such retrospective equitable relief is not permitted against a state official under Section 1983. Therefore, the Court should grant the instant Motion and dismiss Plaintiff's Section 1983 claim (First Cause of Action) against Defendants Walters, Mercado, and Shealy with prejudice.

2.     **Plaintiff Has Not Pled That Defendants Walters, Mercado, and Shealy Participated in the Alleged Violation of Plaintiff's Rights.**

Plaintiff's Section 1983 claim also fails because Plaintiff has not alleged involvement by any of the individual Defendants in any deprivation of his constitutional or other rights.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) that he "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States" and (2) that the deprivation "was committed by a person acting under the color of state law." *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[L]iability is personal, based upon *each defendant's own* constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (emphasis added). "Personal participation of a defendant is a necessary element of a § 1983

claim against a government official." *See Herrera v. Finan*, 176 F. Supp. 3d 549, 568–69 (D.S.C. 2016), *aff'd*, 709 F. App'x 741 (4th Cir. 2017).

In an action such as this (seeking injunctive relief against state officials acting in their official capacities), "the proper defendant is a state official *acting in violation* of federal law who has a sufficient connection to enforcing an allegedly unconstitutional law." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (emphasis added) (internal quotation marks and citations omitted).  Section 1983 requires that the Defendants have personal involvement in the alleged deprivation of Plaintiff's rights:

> This is not a suit brought under Title VII, 42 U.S.C. § 2000e.  Rather it is brought under 42 U.S.C. § 1983, which is inherently a personal action.  Under § 1983, the equitable power of the Court may be directed against a Defendant only if he has by his own conduct participated in the denial of the Plaintiff's civil rights.  [Citations omitted.]

*See West Va. Conference of NAACP v. Bonar, No. 2986*, 1978 U.S. Dist. LEXIS 16977, at *3 (S.D. W. Va. June 27, 1978) (attached hereto as Ex. C); *accord Foley v. Graham*, No. 2:16-cv-01871-JAD-VCF, 2020 U.S. Dist. LEXIS 23925, at *7-8 (D. Nev. Feb. 11, 2020) ("Further, Foley's official-capacity claims against Gillespie for injunctive relief under § 1983 also fail.  In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.") (quotation marks and citation omitted) (attached hereto as Ex. D); *Wiltz v. Shah*, No. 16-cv-00714-NJR, 2016 U.S. Dist. LEXIS 103420, at *9 (S.D. Ill. Aug. 4, 2016) ("[A]s to Defendants Baldwin, Lashbrook, Funk, Godinez, and Shicker, the official liability claims will only be allowed to the extent it is alleged that each one personally participated in or caused the deprivation at hand.") (attached hereto as Ex. E).

Plaintiff does not allege that Defendants Walters, Mercado or Shealy[2] were directly involved in violating his constitutional rights or in the decisions or procedures of the

---

[2]     As to Defendant Shealy, Plaintiff does allege that "Jane Roe used questions furnished to her from Defendant Shealy, who in contrast had not given any questions to John Doe to ask at the Board proceeding" and that Defendant Shealy "did not provide a level playing field, as she was present for and assisted Jane Roe."  (*See* Docket Entry # 1 ¶ 80 & 85).  However, these

Commandant's Board.  None of the individual Defendants were members of that Board.  None of them made the decision to dismiss Plaintiff for one year.  As a result, those Defendants are not proper parties under Section 1983 (whether in their official or individual capacities).  Therefore, the Court should grant this Motion and dismiss Plaintiff's claims against Defendants Walters, Mercado, and Shealy.

### 3.    Plaintiff Has Not Pled That There Was a Policy or Custom Underlying the Alleged Violations of His Constitutional Rights.

In a Section 1983 claim for prospective relief against the individual Defendants in their official capacities, Plaintiff must allege and prove not merely that his rights were violated, but also that this was the result of a policy or custom.  "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation [citation omitted]; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *accord Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997) ("Because this is an official capacity lawsuit, it is a condition precedent to liability under section 1983 that the challenged conduct of the individual Board members be tied to an official Board custom or policy, formal or informal.").  Plaintiff's complaint does not allege that the conduct violating his rights was the result of a formal policy or custom of The Citadel.  Therefore, the Court should dismiss Plaintiff's Section 1983 claims for prospective injunctive relief.

### 4.    Even if Plaintiff Alleged a Cognizable Liberty or Property Interest, He Has Not Alleged That He Was Deprived of Such Interest Without Proper Procedural Due Process.

Plaintiff alleges that, in connection with the Commandant's Board and disciplinary process, he was denied procedural due process before his liberty and property interests were infringed upon.  Without admitting that any legally-recognized property or liberty interest existed, Plaintiff's Section 1983 claim must fail because he was granted due process before his dismissal.

---

alleged actions did not deprive Plaintiff of any rights.  Plaintiff makes no allegations that Shealy's particular conduct caused the deprivation of his rights.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "In the school disciplinary setting, procedural due process requires that colleges give students notice and a hearing before suspending or expelling them." *Doe v. Valencia Coll.,* 903 F.3d 1220, 1234 (11th Cir. 2018). Fundamental fairness requires that the hearing take place "at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *accord Tigrett*, 290 F.3d at 629. "A school . . . is an academic institution, not a courtroom or administrative hearing room. [Citation omitted.] It must, therefore, have greater flexibility in fulfilling the dictates of due process than a court or an administrative agency." *See Henson*, 719 F.2d at 74 (internal quotation marks omitted)). As the Fourth Circuit has noted, "[i]n the absence of a constitutional or statutory deprivation, the federal courts should be loathe to interfere with the organization and operation of an institution of higher education." *See Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 629 (4th Cir. 2002).

In another case involving The Citadel, this Court set forth the following standards to analyze whether a student was granted sufficient procedural due process in connection with a disciplinary action:

> [S]tudents have procedural due process rights to notice and a hearing before suspension and, furthermore, the hearing provided must be a "meaningful" one." . . . " In student disciplinary proceedings, the notice and opportunity to be heard should provide the following safeguards in order to satisfy the requirements of due process: (1) the student must be notified before the hearing of the charges against him; (2) he is entitled to the names of the witnesses against him and either a summary of their testimony or the opportunity to confront and cross examine these witnesses; (3) he has the right to be heard in his own defense and to be present and present evidence on his own behalf; and (4) serious disciplinary action should be based upon ample evidence such that the decision is not arbitrary or capricious."

*See Vega v. Saleeby*, No. C.A. 2:04-0023-18, 2004 WL 3334816, at *4-*6 (D.S.C. July 12, 2004), *aff'd*, 126 F. App'x 626 (4th Cir. 2005). Plaintiff has not plausibly alleged that he was denied due process under this standard.

Plaintiff does not allege that he was denied a hearing. He does not allege that he was denied the opportunity to present documentary and testimonial evidence. He does not allege that he was

not provided advance notice of the charges against him prior to the hearing. He does not allege that he was not provided with the names of witnesses against him. He does not allege that he was deprived of the right to be heard in his own defense. He does not allege that he was not allowed to be present for the Commandant's Board.

Moreover, Plaintiff does *not* allege that he was completely denied the opportunity to cross examine Jane Roe.[3]  To the contrary, his complaint alleges that he was not allowed to cross examine her regarding "false memory"[4]:  "Jane Roe was allowed extensively to cross-examine a number of the witnesses, but when Jane Roe was *asked by John Doe's representative* about 'false memory,' the Board President cut off the questioning." (*See* Docket Entry # 1 ¶ 3 (emphasis added); *accord id.* ¶ 81 (same)).  Plaintiff alleges elsewhere that his cross-examination of Jane Doe "was cut off." (*See* Docket Entry # 1 ¶ 96).  "It is well settled that the accused is not entitled to 'trial-like' rights of confrontation or cross-examination at disciplinary proceedings." *Doe v. Loh*,

---

[3]  Plaintiff does generically allege that "The Citadel failed to allow for cross-examination by John Doe's representative despite the she said/he said nature of the case." (*See* Docket Entry # 1 ¶ 118).  However, in light of the other allegations of the Complaint (and the fact that his representative was actually allowed to cross examine Jane Doe), this cannot be construed as an allegation that The Citadel completely deprived Plaintiff's representative of any right to cross examine.  Plaintiff could not, in good faith, make such allegations consistent with Rule 11. *See Bob McLemore & Co. v. Branch Banking & Tr. Co.*, 54 F. Supp. 2d 554, 563 (W.D.N.C. 1999) ("To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint.  A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation.").

[4]  "False memory syndrome" is a much discredited theory concerning the alleged distortion of recollections. *See* Dallam, S.J., *Crisis or Creation: A Systematic Examination of False Memory Claims*. Journal of Child Sexual Abuse, 9 (3/4), 9-36 (2002) ("A review of the relevant literature demonstrates that the existence of such a syndrome lacks general acceptance in the mental health field, and that the construct is based on a series of faulty assumptions, many of which have been scientifically disproven.").  The syndrome "was described and named by the families and professionals who comprise the False Memory Syndrome Foundation . . ., an organization formed by parents claiming to be falsely accused of child sexual abuse." *See id.*  "False memory advocates have failed to adequately define or document the existence of a specific syndrome, and a review of the relevant literature demonstrates that the construct is based on a series of faulty assumptions, many of which have been disproven.  Likewise, there no credible data showing that the vague symptoms they ascribe to this purported syndrome are widespread or constitute a crisis or epidemic." *See id.*  Plaintiff has not alleged that he intended to present to The Citadel any accepted scientific or expert evidence in support of his invocation of this theory.

Civil Action No. PX-16-3314, 2018 U.S. Dist. LEXIS 53619, at *22 (D. Md. Mar. 29, 2018) (attached hereto as Ex. F) (*citing Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73-75 (4th Cir. 1983)). Plaintiff can cite to no authority to support that he was denied cross examination where his only complaint is that his representative could delve deeper into the discredited concept of "false memories."

Finally, Plaintiff does not allege that the decision of the Commandant's Board was not based on ample evidence — primarily the testimony of Jane Doe. Plaintiff does not dispute that Jane Doe provided testimony of the incidents she alleged. Instead, Plaintiff alleges that her testimony was flawed and should not have been credited. While Plaintiff disagrees with the conclusion of the Commandant's Board, he cannot in good faith allege that it was arbitrary and capricious and not based in evidence. His complaint simply argues that the Commandant's Board should not have relied on Jane Doe's evidence, but should have believed Plaintiff's evidence. This is not sufficient to allege a procedural due process violation.

Therefore, the Court should grant Defendants Walters', Mercado's and Shealy's motion to dismiss Plaintiff's Section 1983 claim (First Cause of Action).

**C.    The Court Should Dismiss Plaintiff's Second Cause of Action — Title IX Against The Citadel.**

Plaintiff's Second Cause of Action is asserted against The Citadel under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Plaintiff alleges that Title IX may be violated by " the imposition of university discipline where gender is a motivating factor in the decision to discipline." (*See* Docket Entry # 1 ¶ 113). He alleges that a "'believe the woman' bias evidenced in the Commandant's Board proceeding and the disposition of John Doe's appeal demonstrated that John Doe was discriminated against on the basis of sex." (*See id.* ¶ 116). He additionally claims that: "The Citadel has created a victim-centered process in which an accused male student is prosecuted under a presumption of guilt. This one-sided process has deprived John Doe, as a male student, of the benefits of his education at The Citadel." (*See id.* ¶ 119). For the reasons that

follow, Plaintiff has not sufficiently alleged a cause of action upon which relief may be granted under his Title IX claim (Second Cause of Action).

**1.    Plaintiff Has Failed to Allege Facts to Support That He Was Treated Differently Because of his Sex.**

Even assuming *arguendo* that Plaintiff was innocent of the offenses with which he was charged, he has not sufficiently stated a cause of action under Title IX because he has not alleged a plausible claim that The Citadel treated him differently because of his gender.

Title IX provides that no person "shall, *on the basis of* sex, . . . be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *See* 20 U.S.C. § 1681(a) (emphasis added). In Title IX claims involving disciplinary proceedings), the Fourth Circuit has held that Plaintiff must allege facts that, "'if true, raise a plausible inference that the university discriminated against [the student] on the basis of sex.'" *See Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021) (*quoting Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). Inherent in this approach is a requirement that Plaintiff plead a "but-for" causal relationship between his gender and the challenged disciplinary action:

> We also clarify that inherent in this approach is a requirement that a Title IX plaintiff adequately plead causation — that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Not just any causal link will suffice because, again, the text of Title IX controls. Title IX prohibits discrimination by federally-supported educational institutions "on the basis of sex." 20 U.S.C. § 1681(a). That language—"on the basis of sex"—is significant. While admittedly not yet addressed in the context of a Title IX school disciplinary proceeding, the Supreme Court and our Circuit have held that the same or similar language requires "but-for" causation. [Citations omitted.] We agree that "on the basis of sex" requires "but-for" causation in Title IX claims alleging discriminatory school disciplinary proceedings.

*See id.*, at 236. In *Sheppard*, the Fourth Circuit affirmed dismissal of a Title IX claim because the plaintiff had failed to sufficiently allege a causal link between gender and the challenged discipline, even though two females involved in the altercation were treated differently. *See id.*, at 238 ("[E]ven construing Sheppard's Amended Complaint as true, as we must, Sheppard has failed to

plead facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex. That is, there is no plausible inference that Sheppard's gender was the 'but-for' cause of his treatment under VSU's disciplinary proceedings.").

Plaintiff generally alleges in a conclusory fashion that "[m]ale respondents in sexual misconduct cases at The Citadel are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof." (*See* Docket Entry # 1 ¶ 122). However, he does not set forth a single specific fact to support this speculative conclusion. He does not allege any outward statements by The Citadel evidencing a discriminatory intent.

Plaintiff's Title IX claim is primarily premised on his generic allegations that The Citadel was biased against men. As discussed in the following sections, without more, those allegations are insufficient to state a claim upon which relief may be granted.

### a.     Allegations That The Citadel Has a Bias Toward Believing the Victim.

Plaintiff imputes a discriminatory intent because he alleges — in a conclusory fashion — that "[t]he Citadel has created a victim-centered process in which an accused male student is prosecuted under a presumption of guilt. This one-sided process has deprived John Doe, as a male student, of the benefits of his education at The Citadel." (*See* Docket Entry # 1 ¶ 119). He further claims that "The Citadel credited a false accusation of sexual violence, presumed that those allegations to be true rather than properly applying the preponderance of the evidence standard and required no reasoned consideration of evidence as required by a burden of proof." (*See id.* ¶ 121). For the reasons that follow, such allegations do not suffice to support that Plaintiff was discriminated against because of his gender.

In *Doe v. Coastal Carolina Univ.*, 522 F. Supp. 3d 173, 176 (D.S.C. 2021).[5], this Court rejected Plaintiff's contention and clarified that the mere more favorable treatment of victims by

---

[5]     Defendants recognize that *Coastal Carolina* applies a standard that is stated differently from the one the Fourth Circuit adopted in *Sheppard*:

> Citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), the parties agree that Doe can attempt to recover on his sex discrimination claim under either an

an educational institution is not evidence of a gender bias; if anything, such an approach could just as likely indicate a "pro-victim" bias, not a gender bias:

> Plaintiff's evidence may demonstrate a victim-centered approach to providing support after the alleged sexual misconduct. However, nothing indicates this different approach had anything to do with gender. If anything, as noted by other courts, "the inference of pro-victim bias is an obvious alternative explanation that overwhelms any potential of gender bias." [Citations omitted.] Simply put, this is not different treatment for similarly situated students on the basis of gender. *Plaintiff and Jane Doe were not similarly situated. Plaintiff was an alleged sexual assailant and Jane Doe was an alleged victim.* This obvious difference is a legitimate basis for a different approach in support. Absent evidence of gender bias, Plaintiff's claim that he received different support from the University than Jane Doe is not, alone, enough to survive summary judgment.

*See Coastal Carolina*, 552 F. Supp. 3d at 181 (emphasis added).

Plaintiff generically alleges that The Citadel failed to objectively consider his position in the Commandants Board because it had a "'believe the woman' gender bias." (*See* Docket Entry # 1 ¶ 84). However, this may be more accurately characterized as a "believe the *victim*" bias. It is not directly related in any way to gender — and Plaintiff makes no factual allegation to support such an inferential leap. "[T]hese allegations at best reflect a bias against people accused of sexual harassment and in favor of victims and indicate nothing about gender discrimination." *Haley v.*

---

> erroneous outcome theory or a selective enforcement theory. To prevail on an erroneous outcome claim, a plaintiff must (1) assert that he "was innocent and wrongly found to have committed an offense," (2) establish "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and (3) demonstrate "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." [Citation omitted.] By contrast, a selective enforcement "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."

*See Doe 2 v. Fairfax Cty. Sch. Bd.*, 2020 U.S. App. LEXIS 33232, at *2-*3, 883 Fed. Appx. 802, 804-05 (4th Cir. Oct. 21, 2020) (attached hereto as Ex. S), *cited in Coastal Carolina*, 552 F. Supp. 3d at 176. However, the Fourth Circuit in *Sheppard* stated that it had "no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*" and that it had "in the past, expressed support for the *Yusuf* framework." *See Sheppard*, 993 F.3d at 236 & n.5. In any event, under either approach, a Plaintiff must allege specific facts supporting the existence of causation. There is nothing to suggest that *Sheppard* would have changed the outcome in *Coastal Carolina.*

*Virginia Commonwealth Univ.,* 948 F. Supp. 573, 579 (E.D. Va. 1996); *Mulla v. Univ. of Minn.*, No. 20-cv-931 (SRN/LIB), 2021 U.S. Dist. LEXIS 28469, at *32 (D. Minn. Feb. 16, 2021) ("Mulla fails to allege that the 'Dear Colleague' letter directed universities to discipline men specifically, as opposed to alleged sexual offenders regardless of sex.") (attached hereto as Ex. G); *Doe v. University of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) ("As for the claim that the University investigates and disciplines men for sexual misconduct far more than women, the Court sees no inference to draw in Plaintiff's favor.").

"[A]llegations that a university was compelled to 'believe the victim' during an investigation do not sustain the inference that the university 'took the genders of the victim and the accused into account.'" *See Doe v. Marian Univ.,* No. 19-CV-388-JPS, 2019 U.S. Dist. LEXIS 222842, at *34 (E.D. Wis. Dec. 31, 2019) (attached hereto as Ex. H); *accord Doe v. Rider Univ.*, Civil Action No. 3:16-cv-4882-BRM-DEA, 2018 U.S. Dist. LEXIS 7592, at *26-27 (D.N.J. Jan. 17, 2018) (attached hereto as Ex. I) ("[A]llegations of a bias against the alleged perpetrator in favor of the victim is insufficient to show an inference of gender bias.  Indeed, courts have stressed that [d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.") (citations and internal quotation marks omitted).

Moreover, Plaintiff does not defeat this result by alleging — with no detail or reference to a single specific case — that accused males are "invariably found guilty" in The Citadel's investigations.  *See Doe v. University of Dayton*, 766 F. App'x 275, 281 (6th Cir. 2019) ("[I]t is not enough to allege that in all of one university's sexual assault investigations during the relevant period, "the accused was male and was ultimately found responsible.") (attached hereto as Ex. J). In *Coastal Carolina*, this Court observed that "[c]ourts across the country and within this circuit refuse to infer gender bias based on statistical disparity." *See Coastal Carolina*, 552 F. Supp. 3d at 180.  Even assuming that 100% of accused men are found guilty, this does not evidence a bias against men.  To the contrary, it may simply be that more men committed offenses and that all of the men who were accused of offenses actually committed them.

In support of his gender bias argument, Plaintiff additionally alleges that "[t]he 'believe the woman' bias was reinforced by the fact that John Doe is of African-American and Italian ancestry and Jane Roe is white." (*See* Docket Entry # 1 ¶ 116). It is unclear how Plaintiff's ancestry supports his argument that he was discriminated against on the basis of his *gender*. *See Brown v. Porter*, No. 2:19cv376, 2019 U.S. Dist. LEXIS 230426, at *64 (E.D. Va. Nov. 26, 2019) ("Identifying as Muslim, as Brown has, does not entitle one to come within the protection of Title IX, and he has presented the Court with no case law to suggest otherwise. [I]t does not—without more information—suggest gender discrimination and trigger Title IX protections.") (attached hereto as Ex. K).

For the foregoing reasons, Plaintiff's allegations that The Citadel favors female victims in sexual assault investigations and discipline is not sufficient to support a Title IX claim of gender discrimination.

> **b.** **Allegations That The Citadel Was "Pressured" By the Department of Education.**

Plaintiff also bases his claims of gender discrimination in part upon the April 4, 2011"Dear Colleague Letter" from the Office for Civil Rights (OCR) of the U.S. Department of Education to colleges and universities ("Dear Colleague Letter") and the OCR's April 29, 2014 "Questions and Answers on Title IX and Sexual Violence". Specifically, Plaintiff alleges that "[t]he Obama Administration, through the DOE and OCR, treated the April 2011 Dear Colleague Letter as binding on regulated parties for all practical purposes and thus has pressured colleges and universities to aggressively pursue investigations of sexual assaults on campuses." (*See* Docket Entry # 1 ¶¶ 51, 57). Plaintiff further avers that OCR threatened to "initiate an administrative action to terminate and/or refuse to grant federal funds or refer the case to the DOJ to file a lawsuit against the school" that failed to follow the Dear Colleague Letter. (*See* Docket Entry # 1 ¶¶ 53-54).

He claims that, to make the Dear Colleague Letter "effectively . . . binding," "OCR hired hundreds of additional investigators for Title IX enforcement." (*See* Docket Entry # 1 ¶ 56). The

Complaint states that "[c]olleges and universities, including The Citadel, were fearful of and concerned about being investigated or sanctioned."  (*See* Docket Entry # 1 ¶ 60).  "To revoke federal funds -- the ultimate penalty -- is a powerful tool because educational institutions receive billions of dollars a year from the federal government."  (*See* Docket Entry # 1 ¶ 60).  Plaintiff alleges that the OCR and Department of Education "created a significant amount of pressure on colleges and universities to treat all those accused of sexual misconduct with a presumption of guilt."  (*See* Docket Entry # 1 ¶ 62).  During the Trump administration, there changes within the OCR and Department of Education.  In 2017, the Dear Colleague Letter was ultimately withdrawn:

> [O]n September 22, 2017, the Department of Education announced that it was withdrawing the 2011 Dear Colleague Letter and the 2014 Questions & Answers on Title IX Sexual Violence, noting in part the criticism of those documents for placing "improper pressure upon universities to adopt procedures that do not afford fundamental fairness" and are "overwhelmingly stacked against the accused."

(*See* Docket Entry # 1 ¶ 68).

Plaintiff asserts that the foregoing general allegations — none of which relate uniquely or specifically to The Citadel — support his contention that The Citadel was biased against him *because of his gender*.  For the reasons that follow, these allegations of "pressure" from the federal government are not sufficient to support Plaintiff's Title IX claim.

In *Coastal Carolina*, this Court rejected such heavy reliance, holding that, although it may be of some limited relevance in a Title IX claim (when combined with evidence specific to the plaintiff), "courts uniformly hold that the [Dear Colleague L]etter alone is not enough to show bias in a particular case."  *See Coastal Carolina,* 552 F. Supp. 3d at 179.  Most courts addressing the issue have reached the same conclusion:

> The majority of other courts to have considered this issue have concluded that, although evidence of the DCL [Dear Colleague Letter] and external pressure placed on the school to conform with its guidance may provide the plaintiff with "a story about why [the school] might have been motivated to discriminate against males accused of sexual assault," such evidence is insufficient in itself to support any inference that the school's actions in a particular case were motivated at least in part by gender bias

*See Doe v. University of Denver*, 952 F.3d 1182, 1192 (10th Cir. 2020).  Similarly, the Eight Circuit has stated:

> We agree with other circuits that the "Dear Colleague" letter, standing alone, "is obviously not enough to get [the Does] over the plausibility line."  [Citations omitted.]  But external pressure from public attention and the threatened loss of federal funding "provides a backdrop that, when combined with other circumstantial evidence of bias in [the Does'] specific proceeding, gives rise to a plausible claim" of intentional bias when a female student accused male athletes of sexual misconduct.

*See Doe v. Regents of the Univ. of Minn.*, 999 F.3d 571, 578 (8th Cir. 2021); *accord Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 929 (S.D. Iowa 2018) ("Plaintiff asserts the 'Dear Colleague Letter' pressured universities to create tribunals with the purpose of finding men responsible for sexual assault or risk losing federal funding. . . . [C]ourts have not found this argument persuasive . . . ."); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 954 (N.D. Ill. 2017) ("Several other courts have similarly rejected erroneous outcome claims based upon allegations of general anti-male bias resulting from public and government pressure."); *Doe v. College of Wooster*, 243 F.Supp.3d 875, 887 (N.D. Ohio 2017) ("[A]llegations that Wooster's more stringent stance against campus sexual assault is the result of pressure exerted by the Department of Education through the issuance of the Dear Colleague Letter fail to support a plausible inference of gender discrimination.").

"[H]ere, Doe does not allege the particularized 'something more' that is required to survive a motion to dismiss."  *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019).  Plaintiff's allegations about the effect of the Dear Colleague Letter are vague and conclusory.  He makes no allegation of any fact to support that the Dear Colleague Letter specifically motivated The Citadel to be biased against him.  He makes no allegation that The Citadel was under investigation by OCR.  He makes no allegation of any specific public pressure put specifically on The Citadel to favor women because of the Dear Colleague Letter.  In fact, he does not make any allegation of anything beyond the mere existence of the Dear Colleague Letter.  This is plainly not enough to alleged gender bias under Title IX.  *See Doe v. Cummins*, 662 F. App'x 437, 450 (6th Cir. 2016)

("[T]his is nothing more than a conclusory allegation devoid of any facts or evidence that UC, itself, has been subjected to any direct investigation or pressure by the Department of Education.") (attached hereto as Ex. L); *Doe v. University of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) ("[P]ressure from the federal government to investigate sexual assault allegations more aggressively . . . says nothing about the University's alleged desire to find men responsible because they are men."); *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 791 (N.D. Ill. 2015) ("Ludlow's claim is essentially that the investigation was biased against him because he is a man and was motivated by Northwestern's desire to placate outside political interests and end bad publicity created by the undergraduate's lawsuit, and that its conclusions were flawed.  As in the last round of briefing, Ludlow does not point the Court to any cases that would support this use of Title IX to attack the outcome of a single internal investigation of an employee and the Court could find none.").

Under Plaintiff's generic approach, *every* male Title IX plaintiff would survive a motion to dismiss, since he could allege that the Dear Colleague Letter generally pressured *all* federally funded educational institutions.  Plaintiff makes no allegations that the Dear Colleague Letter had any special or unique coercive effect on The Citadel.  Plaintiff does not allege that, beyond the mere existence of the Dear Colleague Letter (which applied to all universities receiving federal funding), there was a Title IX funding threat specific to The Citadel at the time of the Commandant's Board.  *See Gischel v. Univ. of Cincinnati*, No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 230848, at *26 (S.D. Ohio Jan. 23, 2018) (finding plausible claim where allegations that defendant "faced pressure not only from the OCR's Dear Colleague Letter, but by the fact the OCR opened a Title IX investigation into whether UC 'discriminated against students based on sex' by failing to equitably respond to reports of sexual violence.") (attached hereto as Ex. M); *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 937 (E.D. Mich. 2015) ("The 'Dear Colleague' letter is a guidance document issued by the U.S. Department of Education pursuant to its regulatory authority under 72 Fed. Reg. 3432.  Sterrett's conclusory allegation that Defendants were induced by the 'Dear Colleague' letter to discriminate against him because of his gender fails to state a claim under Title IX.").

In addition to the foregoing, Plaintiff's Title IX claim must fail because the 2011 Dear Colleague Letter *could not have possibly* "pressured" The Citadel into having a gender bias against Plaintiff. The OCR *withdrew* the Dear Colleague Letter in 2017, long before Jane Doe filed her complaint against Plaintiff on October 18, 2019; thus, at the time Plaintiff was accused, the Dear Colleague Letter could not have "pressured" The Citadel:

> Campus and federal-government pressure may help a plaintiff tell "a story about why [a university] might have been motivated to discriminate" on the basis of sex. [Citation omitted.] But here, the complaint's background allegations are not a motive for sex-based bias against Doe. For starters, Loyola faced no threat of federal investigation or loss of federal funds in 2020 for failing to adhere to the rescinded 2011 letter. Whatever federal pressure the Dear Colleague letter placed on schools before 2017, the government had abandoned that policy long before Loyola's investigation of Doe — the school faced zero risk of federal investigation or losing federal funds for failing to comply with the letter.

*See Doe v. Loyola Univ.-Chicago*, No. 20 CV 7293, 2021 U.S. Dist. LEXIS 116182, at *20 (N.D. Ill. June 22, 2021) (attached hereto as Ex. N) (granting motion to dismiss); *accord Mulla v. Univ. of Minn.*, No. 20-cv-931 (SRN/LIB), 2021 U.S. Dist. LEXIS 28469, at *29 (D. Minn. Feb. 16, 2021) ("Mulla refers to the 2011 Department of Education's 'Dear Colleague' guidance letter that, by his own pleading, was withdrawn by the Department in 2017. . . . Therefore, such guidance was not in effect at the time of Mulla's 2019 suspension and 2020 dismissal.") (attached hereto as Ex. G).

For the foregoing reasons, the Court should grant The Citadel's Motion to Dismiss Plaintiff's Title IX claim (Second Cause of Action) with prejudice.

**D.    The Court Should Dismiss Plaintiff's Complaint to the Extent He Attempts to Bring This Action Via Pseudonym.**

In his Complaint, Plaintiff concedes that he has commenced this action via the pseudonym, "John Doe." (*See* Docket Entry # 1, at 1). He indicates that he "has filed herewith a motion to proceed by pseudonym and giving pseudonym status also to the college complainant[6] 'Jane Roe.'"

---

6    Notwithstanding the instant Motion to Dismiss, Defendants agree that — if this case moves forward — Jane Doe's identity should be protected by a pseudonym. Ms. Doe is not a party to this case and did not do anything to embroil herself in this litigation. Moreover, she is

(*See id.*, at 1 n.1).  It is inappropriate for Plaintiff to commence and prosecute this lawsuit using a pseudonym.  Therefore (if Plaintiff's claims survive Defendants' other grounds for dismissal), the Court should dismiss the Complaint and require that Plaintiff replead using his actual name.

"The title of the complaint must name all parties."  *See* Fed. R. Civ. P. 10(a).  The purpose of this rule "is to 'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'"  *See Doe v. Pittsylvania Cty*., No. 4:11-cv-43, 2012 U.S. Dist. LEXIS 13618, at *3 (W.D. Va. Feb. 3, 2012) (attached hereto as Ex. O).  Plaintiff's Complaint currently violates Rule 10(a), as it does not identify Plaintiff by his actual name.

"[I]t is the litigant seeking to proceed anonymously or under pseudonym that bears the burden to demonstrate a legitimate basis for proceeding in that manner."  *CTH 1 Caregiver v. Owens*, No. 8:11-2215-TMC, 2012 U.S. Dist. LEXIS 90998, at *8 (D.S.C. July 2, 2012) (attached hereto as Ex. P) (*citing Qualls v. Rumsfeld*, 228 F.R.D. 8, 13 (D.D.C. 2005)).  "The Court begins with the overarching presumption that allowing a party to proceed under a pseudonym is a rare disposition."  *See Roe v. CVS Caremark Corp.,* Civil Action No. 4:13-cv-3481-RBH, 2014 U.S. Dist. LEXIS 193843, at *6 (D.S.C. Sep. 11, 2014) (attached hereto as Ex. Q) (internal quotation marks omitted) (denying motion for leave to proceed under pseudonym); *accord James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993) (referring to leave to proceed anonymously as "rare dispensation").  The Fourth Circuit has identified the following elements for consideration in connection with a request to proceed anonymously:

> As is ordinarily the case where discretion is committed to trial courts, some guidelines for its exercise in the form of factors that should be considered by courts considering anonymity requests have been judicially recognized.  They are not many, for the question happily is one that is not too often raised.  But some can be gleaned from the relatively few cases--both at trial and appellate levels--that have

---

an alleged victim of sexual assault and, in light of that, the law recognizes an interest in protecting her confidentiality.  *See* S.C. Code § 16-3-730 ("Whoever publishes or causes to be published the name of any person upon whom the crime of criminal sexual conduct has been committed or alleged to have been committed in this State in any newspaper, magazine or other publication shall be deemed guilty of a misdemeanor . . . .").

wrestled with the problem. Among them are the following that have relevance to this case: [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously

*See James*, 6 F.3d at 238. Weighing these factors, Plaintiff cannot show that this is an exceptional case warranting the use of a pseudonym.

First, Plaintiff cannot show that this case involves the type of highly sensitive issues that warrant his use of a pseudonym:

[C]ourts have generally been reluctant to provide anonymity based on a plaintiff's fear of embarrassment over the revelation of personal matters. . . . Types of cases in which plaintiffs have been permitted to proceed anonymously in other courts include birth control cases, abortion cases, welfare cases involving minors born to unmarried parents, and cases involving issues of homosexuality. . . . Further, there is no evidence of any retaliation and the Plaintiffs are not minors.

*See Richard S. v. Sebelius*, No. 3:12-007-TMC, 2012 U.S. Dist. LEXIS 72873, at *5-6 (D.S.C. May 25, 2012) (attached hereto as Ex. R) (denying request to proceed anonymously, despite argument that claims involved "matters of an intensely personal nature regarding Plaintiffs' disabilities"). Plaintiff is not the victim of sexual abuse; rather, he is an alleged perpetrator of sexual harassment. Plaintiff has not been absolved of the charges against him. Moreover, these claims do not involve Plaintiff's private sexual life, they concern allegations that he engaged in harassing conduct. As a result, the first factor does not favor the use of a pseudonym.

Additionally, Plaintiff has not shown any risk of retaliatory physical or mental harm to him or, more critically, to innocent non-parties. Furthermore, Plaintiff is an adult, not a minor. Moreover, while this action is, in part, against a state agency, it is also against individual government officials. In any event, as this Court has observed, "[t]he simple fact that plaintiff sues a governmental entity does not give the court more reason to grant h[is] request for anonymity." *Richard S.*, 2012 U.S. Dist. LEXIS 72873, at *6. In light of these factors, the Court should dismiss

the Complaint (with leave to refile in Plaintiff's real name) because Plaintiff should not be allowed to proceed anonymously.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully ask this Court to grant this Motion to Dismiss and to dismiss Plaintiff's Complaint with prejudice.  Alternatively, the Court should dismiss the Complaint with leave for Plaintiff to refile under his real name.

Respectfully Submitted,

BARNWELL WHALEY PATTERSON & HELMS, LLC


By: s/ John W. Fletcher
M. Dawes Cooke, Jr., Esq.
John W. Fletcher, Esq.
211 King Street, Suite #300 (29401)
Post Office Drawer H
Charleston, South Carolina 29402-0197
(843) 577-7700
*Attorneys for Defendants The Citadel, The Military College of South Carolina, Glenn M. Walters, in his official capacity at The Citadel; Valerie Mercado, in her official capacity at The Citadel; and Janet Shealy, in her official capacity at The Citadel*

Charleston, South Carolina
March 25, 2022