**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 2:21-cv-04198-DCN |
| THE CITADEL, *the Military College of South Carolina*; GLENN M. WALTERS, *in his official capacity at The Citadel*; VALERIE MERCADO, *in her official capacity at The Citadel*; and JANET SHEALY, *in her official capacity at The Citadel*, | ) ) ) ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on defendant The Citadel, the Military College of South Carolina ("The Citadel") and defendants Glenn M. Walters ("Walters"), Valerie Mercado ("Mercado"), and Janet Shealy's ("Shealy") (collectively, the "individual defendants" and together with The Citadel, "defendants") motion to dismiss, ECF No. 10. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

This case arises out of the allegedly wrongful expulsion of plaintiff, proceeding under the pseudonym "John Doe," for sexual misconduct. John Doe ("Doe") was a scholarship cadet at The Citadel, a state-incorporated military college in South Carolina. On October 18, 2019, John Doe's classmate, Jane Roe, filed a complaint with The Citadel, accusing Doe of three incidents involving sexual misconduct during the prior school year. Doe denied the accusations. The complaint was referred to a Commandant's Board (the "Board") at The Citadel, and after a hearing, the Board

determined that it was more likely than not that Doe "committed an act of sexual violence in non-consensual physical contact of a sexual nature by rubbing his front side against the backside of Jane Roe at the Law Barracks Sally Port." ECF No. 1, Compl. ¶ 83. Doe alleges that the Board made its decision by purportedly judging Jane Roe and her female friend to be more credible than Doe and the witnesses who corroborated his account. Doe further alleges that the Board's determination was made contrary to multiple details that favored Doe because the Board was motivated by "a 'believe the woman' gender bias." Compl. ¶ 84. As a result of the Board's decision, Doe lost his Marine scholarship and was dismissed from the Citadel with leave to apply for possible readmission after one year. Doe subsequently appealed, whereby he raised new evidence from two additional witnesses, claimed that the Board was conflicted, and argued that he had been denied due process. Compl. ¶ 85. A separate tribunal denied Doe's appeal.

On December 30, 2021, Doe filed the instant action against defendants, alleging (1) denial of his Fourteenth Amendment due process rights in violation of 42 U.S.C. § 1983 against the individual defendants, and (2) violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq. against The Citadel. Compl. ¶ 4.

On March 25, 2022, defendants filed their motion to dismiss for failure to state a claim. ECF No. 10. On May 9, 2022, Doe responded in opposition. ECF No. 13. Defendants replied in support of their motion on June 6, 2022. ECF No. 21. Doe, with leave of the court, filed a surreply on June 22, 2022. ECF No. 24. The court held a hearing on the motion on July 7, 2022. ECF No. 25. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

## III.  DISCUSSION

Defendants seek dismissal of the complaint on three grounds.  First, defendants move to dismiss the § 1983 claims against the individual defendants.  Second, defendants

seek to dismiss the Title IX claim against The Citadel.  Finally, defendants argue that in the alternative, Doe improperly brought this action under a pseudonym, and dismissal is warranted on that basis as well.  Although the parties address the pseudonym issue last, the court briefly addresses it first.  Because the court grants John Doe leave to proceed under a pseudonym, the court then addresses the merits of the two claims in the complaint, ultimately dismissing both.

### A.  Proceeding by Pseudonym

Defendants argue that the court should dismiss the complaint because Doe improperly commenced this lawsuit under a pseudonym.  The Federal Rules of Civil Procedure require that the identification of the parties to a case be disclosed.  See Rule 10(a) ("The title of the complaint must name all the parties . . . .").  The Fourth Circuit has recognized that "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym."  Doe v. Public Citizen, 749 F.3d 246, 273 (4th Cir. 2014) (citing James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993)).  In deciding whether a party should be permitted to litigate pseudonymously, district courts consider the following nonexclusive factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Jacobson, 6 F.3d at 238 (citations omitted).

Here, defendants argue that the <u>Jacobson</u> factors weigh against allowing Doe to proceed under pseudonym. Specifically, defendants argue that this case does not involve highly sensitive issues, that Doe is an adult, and that he has not presented any risk of retaliation to him or to innocent third parties. The court rejects defendants' argument. Despite defendants' perplexing argument to the contrary, the serious allegations of sexual misconduct and the resulting investigations at issue in this action are undoubtedly sensitive and highly personal. The anonymity in this action is designed to protect not only the plaintiff, but also the accuser, from mental harm. The court finds that this action is a quintessential example of the appropriate use of anonymity in litigation. Indeed, this order alone contains at least a dozen citations to campus investigation cases where the plaintiff proceeded under the name "Doe." Additionally, while the suit involves claims of unlawful state action, the defendants in this case are private parties. Further, defendants have not shown that allowing Doe to proceed by pseudonym poses any risk of unfairness to them, particularly because The Citadel should know who Doe and Roe are considering they conducted the investigation and hearing. Finally, the court notes that Doe previously filed a motion to proceed under pseudonym, ECF No. 3, which the court granted as unopposed, ECF No. 8. In addition to being unfounded, defendants' objections are also untimely. As such, the court will not dismiss the action on the ground that it was commenced under a pseudonym.

### B. Motion to Dismiss Individual Defendants

Doe's complaint alleges § 1983 claims against the individual defendants—Walters, Mercado, and Shealy—in their official capacities. Walters, Mercado, and Shealy are all employees of The Citadel, a state institution, and as such, they are state

5

officials.  Defendants argue that this claim should be dismissed against the individual

defendants for four reasons: (1) the individual defendants are immune from suit because

Doe does not seek prospective relief, (2) the complaint fails to allege that the individual

defendants participated in the alleged violation of Doe's rights, (3) the complaint fails to

allege a custom or policy, and (4) the complaint fails to allege a deprivation of a liberty or

property interest without procedural due process.  The court addresses each basis for

dismissal in turn.

### 1. Sovereign Immunity

First, defendants argue that the suit against the individual defendants is barred by

sovereign immunity.  The Eleventh Amendment bars suits by citizens against non-

consenting states brought either in state or federal court.  See Alden v. Maine, 527 U.S.

706, 712 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v.

Louisiana, 134 U.S. 1, 10 (1890).  Such immunity extends to arms of the state, including

a state's agencies and instrumentalities and employees.  See Pennhurst State Sch. &

Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984); Regents of the Univ. of Cal. v. Doe,

519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  In

Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to

Eleventh Amendment immunity for state officers "which permits a federal court to issue

prospective, injunctive relief against a state officer to prevent ongoing violations of

federal law."  McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010).  A violation is

considered ongoing "when a state officer's enforcement of an allegedly unconstitutional

state law is threatened."  Id. (citation omitted); see also Seminole Tribe, 517 U.S. at 73

(describing prospective injunctive relief as that necessary to "end a continuing violation of federal law").

Here, under the § 1983 due process cause of action, Doe seeks "an injunction ordering the vacating of [Doe's] dismissal with no readmission requirements, vacating [his] disciplinary findings and decision, [and] granting expungement of the disciplinary record from Plaintiff John Doe's school records at The Citadel." Compl. at 38. Defendants contend that Doe's request for injunctive relief is a request for future relief in name only. According to defendants, a request "to undo a past decision or action" is, at its heart, "purely retrospective." ECF No. 10-1 at 9. In response, Doe argues that injunctive relief to clear a student's academic record and to reinstate a student is considered prospective relief.

Defendants correctly assert the rule that the Ex parte Young exception is not implicated if there is no ongoing violation of federal law and, instead, a plaintiff is simply trying to rectify an alleged harm done in the past. See Republic of Para. v. Allen, 134 F.3d 622, 628 (4th Cir. 1998). But here, Doe is seeking reinstatement and expungement of his academic record, among other injunctive relief, which numerous courts have characterized as requests for prospective relief and thus not barred by the Eleventh Amendment. See, e.g., Shepard v. Irving, 77 F. App'x 615, 620 (4th Cir. 2003) (ruling that a request to expunge a grade from an academic record was "prospective in nature"); Hall v. Med. Coll. of Ohio at Toledo, 742 F.2d 299, 307 (6th Cir. 1984) (finding that reinstatement of a medical student constituted prospective relief). This court likewise finds that the loss of Doe's scholarship and the mark on his disciplinary record constitute ongoing injuries that may be remedied by prospective relief. Accordingly, the court

7

concludes that Doe's claims under the first cause of action fall within the Ex parte Young

exception to the Eleventh Amendment and denies the motion to dismiss on that ground.

### 2.    Participation by the Individual Defendants

Second, defendants argue that the complaint fails to allege that the individual

defendants were involved in any deprivation of Doe's constitutional rights.  Defendants

argue that for a complaint to properly allege that state officials were acting under color of

state law, the complaint must allege "[p]ersonal participation" "based upon each

defendant's own constitutional violations."  ECF No. 10-1 at 10 (citing Herrera v. Finan,

176 F. Supp. 3d 549, 568–69 (D.S.C. 2016) and Trulock v. Freeh, 275 F.3d 391, 402 (4th

Cir. 2001)).  Doe correctly notes, however, that Herrera, Trulock, and other cases cited by

defendants concerned whether state officials possessed qualified immunity, meaning the

lawsuits in those cases were brought against the officials in their personal capacities.  See

Kentucky v. Graham, 473 U.S. 159, 166–67 (1985) ("[A]n official in a personal-capacity

action may, depending on his position, be able to assert personal immunity defenses, such

as an objectively reasonable reliance on existing law.").  "Official capacity suits, in

contrast, 'generally represent only another way of pleading an action against an entity of

which an officer is an agent.'"  Id. at 165–66 (quoting Monell v. N.Y.C. Dep't of Soc.

Servs., 436 U.S. 658, 690 n.5 (1978)).  Here, Doe's claims are brought against the

individual defendants in their official capacities.

In their reply brief, defendants clarify the proper standard to apply when deciding

whether the proper defendants are named in a suit brought under the Ex parte Young

exception.  "The Ex parte Young exception is directed at 'officers of the state [who] are

clothed with some duty in regard to the enforcement of the laws of the state, and who

threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" McBurney, 616 F.3d at 399 (citing Ex parte Young, 209 U.S. at 155–56) (alterations in original). Defendants maintain that under this rule, the individual defendants must have directly participated in the alleged wrongdoing to be properly-named Ex parte Young defendants. The court, however, does not read a requirement of personal participation into that rule. Other courts have explained that "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity." Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988); see also Taaffe v. Drake, 2016 WL 1713550, at *5 (S.D. Ohio Apr. 29, 2016) ("[The Ex parte Young standard] is a different standard than the 'personal involvement' test applied in cases . . . concerned with liability for money damages.").

Conversely, although personal participation is not a necessary condition, Doe may not sue persons with no involvement in the alleged wrongdoing. As the Fourth Circuit has explained, "Ex parte Young authorizes suits only against officers with 'some connection with the enforcement of the act.'" Doyle v. Hogan, 1 F.4th 249, 254 (4th Cir. 2021) (quoting Ex parte Young, 209 U.S. at 157). Specifically, the plaintiff must show a "'special relation' between the officer being sued and the challenged statute [or decision] before invoking the exception." McBurney, 616 F.3d at 399 (citing Ex parte Young, 209 U.S. at 157).

With the proper governing standards now in hand, the court turns to the substance of the parties' arguments. Here, Doe argues that Walters, Mercado, and Shealy are clothed with the duty to enforce the laws of the state and are capable of implementing any injunctive relief this court might issue. First, Doe alleges and reasserts that Walters is the

9

President of The Citadel and, in his official capacity, is responsible for The Citadel's compliance with federal and state laws and court decrees, including expungement of a disciplinary record.  Compl. ¶ 85 [sic].[1]  Second, Doe alleges and reasserts that Mercado is the Title IX Coordinator of The Citadel, and injunctive relief, including expungement of a disciplinary record, is property directed at her.  Id. ¶ 104.  Third, Doe alleges that Shealy is the Director of the Cadet Advocacy, Response, and Education program, which is the sexual assault center at The Citadel.  Id. ¶¶ 10, 105.  In addition to alleging that Shealy is responsible for expungement of a disciplinary record, the complaint further alleges that Shealy was present at the hearing and provided assistance to Jane Roe by furnishing her with a list of questions that she then used to cross-examine John Doe's witnesses.  Id. ¶ 80.

The court finds that, as alleged, the individual defendants are sufficiently connected to the alleged constitutional violations.  Shealy presents the most obvious case.  Even if the Fourth Circuit's special relationship test required personal participation, as defendants suggest, Doe has sufficiently alleged that Shealy was involved in the allegedly unconstitutional adjudicative process.  The complaint alleges that Shealy took part in the hearing by assisting Jane Roe, in violation of Doe's due process rights.  But the allegations as to Walters and Mercado present more challenging questions, as there are no allegations that they were involved in the hearing or decision to dismiss Doe.  As one district court aptly observed of such circumstances, "[c]ourts have struggled about the degree to which an official must be responsible for a challenged action to satisfy the Ex

---

[1] This paragraph, which appears under ¶ 103 of the complaint on page 33, appears to be incorrectly numbered as ¶ 85.

parte Young connection requirement." <u>Regent Univ. v. Bd. of Regents of Univ. System of Ga.</u>, 2013 WL 12155469, at *3 (S.D. Ga. Mar. 5, 2013) (alteration in original).  On balance, the court finds that the "special relation" requirement is satisfied when the complaint plainly alleges that the defendants have the ability to order the relief requested.  <u>See</u> <u>S.C. Wildlife Federation v. Limehouse</u>, 549 F.3d 324, 333 (4th Cir. 2008) ("'[S]pecial relation' under <u>Ex parte Young</u> has served as a measure of <u>proximity to</u> and <u>responsibility for</u> the challenged state action.  This requirement ensures that a federal injunction will be effective with respect to the underlying claim.") (emphases in original); <u>D.T.M. ex rel. McCartney v. Cansler</u>, 382 F. App'x 334, 338 (4th Cir. 2010) (finding that the <u>Ex parte Young</u> exception was properly applied to a state official responsible for administering a state Medicaid program in a suit alleging wrongful reduction and termination of Medicaid services); <u>accord</u> <u>Taaffe</u>, 2016 WL 1713550, at *6 (finding that the complaint sufficiently alleged that the defendants had "the ability to order" the relief sought in satisfaction of "the 'connection' requirement of <u>Ex parte Young</u>").  Thus, viewing the facts in the light most favorable to Doe—as the court must—Walters and Mercado are proper defendants because they are alleged to have the ability to expunge Doe's disciplinary record.

This conclusion is consistent with the "some action" language that defendants argue has been applied by a court in this district.  <u>See</u> <u>S.C. Elec. & Gas Co. v. Whitfield</u>, 329 F. Supp. 3d 191, 203 (D.S.C. July 26, 2018) (citing <u>Allen v. Cooper</u>, 895 F.3d 337, 355 (4th Cir. 2018)) (explaining that an <u>Ex parte Young</u> suit "must be based on some action" that the state officials took).  After all, several courts have found that university officials who are responsible for compliance with the law or enforcement of school

policies at a high level are properly sued—and indeed may be necessary defendants—for a challenged decision that implicates those laws or policies.  Compare Young Conservatives of Tex. Found. v. Univ. of N. Tex., 569 F. Supp. 3d 484, 492 (E.D. Tex. 2021), appeal docketed sub nom., Young Conservatives v. Smatresk, No. 22-40225 (5th Cir. Apr. 10, 2022) (determining that, under Ex parte Young's "connection requirement," the university president and school officials could be sued for allegedly enforcing nonresident tuition rates against members of a political organization), with Doe v. Univ. of Colo., Boulder ex rel. Bd. of Regents, 255 F. Supp. 3d 1064, 1083–84 (D. Colo. 2017) (dismissing a complaint that alleged, in part, that the school's decision to disclose the plaintiff's sexual assault was unconstitutional because he had failed to name the particular university official who was charged with ensuring that "this obligation [wa]s carried out").  The court likewise finds that the school officials here were responsible for enforcing The Citadel's decision and would be responsible for any injunctive relief that the court were to grant.  Accordingly, the court concludes that Ex parte Young's connection requirement does not bar Doe from suing the individual defendants under the exception to Eleventh Amendment immunity.

### 3. Policy or Custom

Third, defendants argue that Doe fails to allege that there was a policy or custom underlying the alleged violation of his due process rights.  In response, Doe argues that only suits against municipalities—known as Monell claims—require the pleading of a custom or policy.  Doe is correct in that Monell's policy-or-custom requirement is "a liability standard for suits against municipalities . . . and it has no applicability to state officers who are immune from suit for damages but suspectable to suit under Ex parte

<u>Young</u> for injunctive relief."  <u>See</u> <u>Rounds v. Clements</u>, 495 F. App'x 938, 941 (10th Cir. 2012).  It stands to reason that <u>Monell</u> does not apply when a state official sheds the state-representative label by committing an allegedly unconstitutional act.  Defendants insist that the requirement exists because the "policy or custom" language has appeared in <u>Ex parte Young</u> decisions issued by courts in this circuit.  <u>See, e.g.</u>, <u>McGee v. Cole</u>, 115 F. Supp. 3d 765, 772 (S.D. W. Va. 2015) ("Under the doctrine of <u>Ex parte Young</u>, a plaintiff may challenge the constitutionality of a state law or local ordinance, policy, or custom by bringing suit against an official, in her official capacity, for enforcing or administering that law or rule."); <u>Smith v. City of Huntington</u>, 2017 WL 5180456, at *3 (S.D. W. Va. Sept. 28, 2017) (noting that a proper <u>Ex parte Young</u> claim must allege "a specific unconstitutional policy, custom, or practice").  Upon review, the court finds that these decisions were not mandating the pleading of policies and customs but, rather, were explaining that they are among the state actions that a plaintiff may challenge.  After all, while <u>Ex parte Young</u> certainly applies when a plaintiff seeks prospective relief against state officers charged with enforcing or administering an unconstitutional state policy, plaintiffs can—and frequently do—sue officers charged with enforcing unconstitutional <u>state laws</u> or, as in this case, unconstitutional <u>decisions or rulings</u>.  <u>See</u> <u>Van Morgan v. Barker</u>, 2020 WL 265282, at *3 (E.D. Tenn. Jan. 17, 2020) ("Prospective injunctive relief can involve the reversal of a past administrative ruling.").  Here, the complaint plainly alleges that the individual defendants were responsible for an allegedly unconstitutional administrative ruling.  Therefore, the court finds that the <u>Ex parte Young</u> doctrine applies under this basis as well and denies defendants' motion.

### 4. Procedural Due Process

Fourth and finally, defendants argue that if the court were to find that the individual defendants are properly named, the court should still grant their motion to dismiss based on the substance of the complaint. Specifically, defendants submit that even if Doe had a legally cognizable liberty or property interest, Doe's § 1983 claim must fail because he fails to allege a deprivation of such an interest without procedural due process. Upon review, the court agrees.

To demonstrate a procedural due process violation, a plaintiff must show that he or she has a constitutionally protected property or liberty interest[2] and that he or she was deprived of that interest by the state without due process of law. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570 (1972); Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The amount and type of process due is dependent on the nature of the interests at stake. Goss v. Lopez, 418 U.S. 565, 575–76 (1975). In the academic setting, courts generally find that students have a procedural due process right to notice and a hearing prior to a

---

[2] Defendants seem to implicitly acknowledge that they face an uphill battle in arguing that Doe does not have a liberty or property interest in his continued enrollment as a cadet at The Citadel, particularly at the motion to dismiss stage. In general, the Fourth Circuit has presumed without deciding that university students "possess a 'constitutional protectable right' in their continued enrollment in a university." Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002). Similarly, courts in this circuit recognize a liberty interest in clearing one's name from sexual assault charges. See Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 723 (E.D. Va. 2015). Therefore, the court similarly presumes, for purposes of this motion, that Doe has a legally cognizable property or liberty interest.

long-term suspension or expulsion.  See Henson v. Honor Comm. of Univ. of Va., 719

F.2d 69, 74 (4th Cir. 1983); Emanuelson v. Univ. of N.C. at Greensboro, 2018 WL

1779342, at *8 (M.D.N.C. Apr. 12, 2018).  At the same time, a student's due process

rights may be satisfied by "something less than a trial-like proceeding."  Henson, 719

F.2d at 74 (citing Goss, 418 U.S. at 574).  Although no procedural requirements are

etched in stone,[3] this court has previously recognized that the process a student is entitled

to may be derived from the following nonexclusive benchmarks:

> In student disciplinary proceedings, the notice and opportunity to be heard
> should provide the following safeguards in order to satisfy the requirements
> of due process: (1) the student must be notified before the hearing of the
> charges against him; (2) he is entitled to the names of the witnesses against
> him and either a summary of their testimony or the opportunity to confront
> and cross examine these witnesses; (3) he has the right to be heard in his
> own defense and to be present and present evidence on his own behalf; and
> (4) serious disciplinary action should be based upon ample evidence such
> that the decision is not arbitrary or capricious.

Vega v. Saleeby, 2004 WL 3334816, at *6 (D.S.C. July 12, 2004).  Both Doe and

defendants agree that the court should apply the factors under Vega.  But Doe suggests

that while the court should apply the Vega factors, the list would be incomplete without

considering the neutrality and impartiality of a tribunal.  In support, Doe cites Marshall v.

Jerrico, Inc., 446 U.S. 238 (1980).  However, in Marshall, the Supreme Court ruled that

"[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in []

civil and criminal cases," id. at 242 (emphasis added), and again, it is well-established

---

[3] "Although Goss provided articulable procedural requirements for a suspension
of ten days or less, no court has yet prescribed a precise paradigm that is required when a
student is removed from a particular school."  Doe 2 ex rel. Doe 1 v. Fairfax Cnty. Sch.
Bd., 384 F. Supp. 3d 598, 612 (E.D. Va. 2020), aff'd, 832 F. App'x 802 (4th Cir. 2020);
see also Emanuelson, 2018 WL 1779342, at *7 n.6 ("[N]o higher court has created a
concrete 'model for assuring constitutional due process in all administrative settings.'")
(quoting Henson, 719 F.2d at 74).

that in the academic setting, "the requirements of due process may be satisfied by something less than a trial-like proceeding," Henson, 719 F.2d at 74. While Doe cites no case where a court required an unbiased tribunal to satisfy the rigors of due process in the academic setting, this court has nevertheless identified at least one case that applied the requirement to the school complaint process. See Davis v. Balt. City Cmty. Coll., 2019 WL 5636362, at *5 (D. Md. Oct. 31, 2019) ("When a student faces expulsion, the requirements of due process are met when the student received advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker.") (emphasis added). Accordingly, the court will consider Doe's impartial tribunal argument. Doe argues that he was not provided with a neutral and impartial tribunal because Shealy assisted Jane Roe at the hearing by furnishing her with questions to use but did not do the same for Doe. Compl. ¶ 80. Doe also alleges that one of the Board members was Jane Roe's Battalion TAC Officer during the 2018 to 2019 school year. Compl. ¶ 79. But notably, the complaint does not contain any allegations about how the tribunal that denied Doe's appeal was biased, which is notable given that he raised the Board's conflict of interest as one of the bases for his appeal. See generally Compl. ¶¶ 85–87. Rather, the complaint merely alleges that the "stated grounds for denying John Doe's appeal were without merit." Id. ¶ 87. Even taking all the facts alleged as true, it would require an unwarranted inference to find that Doe faced an impartial tribunal not once but twice. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)) (finding that while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept "unwarranted inferences"). Accordingly, the court does not reach that inference.

16

Turning to the remaining benchmarks under <u>Vega</u>, Doe does not dispute that under the first factor, he was provided with adequate notice of the hearing. Under the second factor, Doe argues that the Board denied him an opportunity to cross-examine Jane Roe. Specifically, the complaint alleges that Doe's representative started cross examining Jane Roe but was "cut off" once the representative started asking about her "false memory."[4] Compl. ¶ 81. While it is true that this court and others have recognized that an accused student has a right to confront his or her accuser, it is equally true that courts have recognized that this right is not unyielding because universities may "have a legitimate interest in avoiding procedures that may subject an alleged victim to further harm or harassment." <u>Doe v. Baum</u>, 903 F.3d 575, 583 (6th Cir. 2018). Indeed, "the Fourth Circuit has not found 'a basis in law' for 'importing' the right to cross-examination 'into the academic context." <u>Doe 2</u>, 384 F. Supp. 3d at 612 (quoting <u>Butler v. Rector & Bd. of Visitors of Coll. of William & Mary</u>, 121 F. App'x 515, 520 (4th Cir. 2005)). Moreover, even though the court accepts as true that Doe's representative was not permitted to complete this line of questioning, this fact alone does not compel the court to infer that Doe was prohibited from confronting his accuser. As the court noted at the hearing, tribunals—including this one—often halt questioning on certain issues for a

---

[4] Defendants strongly imply, in multiple footnotes, that Doe cannot in good faith claim that the Board deprived his representative of an opportunity to cross-examine Jane Roe. ECF No. 10-1 at 14 n.3. This includes a footnote whereby defendants, despite acknowledging the posture of this action, include an excerpt from the hearing transcript in which Doe's representative supposedly voluntarily ceased questioning. ECF No. 21 at 8 n.2. The court disregards this argument because the complaint plainly alleges that Doe's representative was cut off, and whether Doe's counsel committed a Rule 11 violation by pleading that fact is not before the court. As it relates to this motion, however, the factual underpinning of the allegation—which the court assumes as true—fails to move the needle on Doe's due process claim for the reasons discussed herein.

myriad of reasons.  Like in <u>Vega</u>, "[t]he Citadel was free to proceed in this manner in the hearing of plaintiff's case," and its decision to stop the questioning of Jane Roe because it might have deemed it irrelevant, harassing, or otherwise "cannot be said to have stripped the disciplinary process provided to plaintiff of its constitutional 'meaning.'"  <u>Vega</u>, 2004 WL 3334816, at *6.

The court finds the third factor particularly relevant and convincing.  It is clear from the face of the complaint that Doe had the opportunity to present a statement and testimony at the hearing.  Compl. ¶ 82.  He was permitted to call witnesses, including character witnesses, which he did.  <u>Id.</u>  He was accompanied by a representative.  <u>Id.</u> ¶ 118.  Some courts have even concluded that in the absence of a formal model for assuring procedural due process in the academic setting, similar procedures were enough to sufficiently safeguard a student's interest at a disciplinary hearing.  <u>Doe 2</u>, 384 F. Supp. 3d at 612 (importing Virginia's due process requirements and finding it sufficient that the student and his representatives knew the reasons why the student had been suspended, were able to participate during the hearing, and were notified of their right to appeal).  In this sense, the court finds that most—if not all—of the relevant touchstones were met here.

Finally, under the fourth factor, Doe argues that the Board committed a litany of errors that compel a finding that the Board's decision was arbitrary or capricious.  Namely, Doe alleges that for the incident that allegedly occurred at the Law Barracks Sally Port,[5] the Board heard testimony from a witness, dubbed "Noa," who testified that

---

[5] The court focuses on the allegations related to the incident that purportedly occurred at the Law Barracks Sally Port because that is the only incident in which the Board found culpability.

Doe was at the marine lab from 16:00 to 18:00 on the day in question. Compl. ¶ 81. Doe claims that despite that testimony, the Board's questions to him were "aimed at establishing that . . . it was possible" Doe could have been with Jane Roe at 18:00, as she claimed. Id. Doe also alleges that the Board overlooked his testimony that if he were coming from the marine lab, he would have been carrying his Kevlar and rifle, and his hands would not have been free to grope Jane Roe. Finally, Doe alleges that the Board allowed Jane Roe to change the date of the claimed incident at the Law Barracks Sally Port, from October 2019 to on or around September 12, 2019, after Doe obtained video surveillance footage from October 2019 that, presumably, would not have depicted the incident as Roe claimed. Id. ¶ 77. No footage was available before early October 2019. Id. ¶ 82. Critically, however, none of the allegations pass the threshold for plausibly asserting that the Board's decision was arbitrary and capricious. Within the four corners of the complaint, it is evident that the Board reviewed all of the evidence and issued a decision that clearly outlined which incident it determined that Doe was more likely than not to have committed, along with an explanation. Id. ¶¶ 83. Doe was provided an opportunity to appeal, which he did, and his appeal was denied by an independent, unbiased tribunal that provided Doe with stated reasons responding to each of his four objections. Id. ¶ 86. In sum, Doe simply takes umbrage with how the Board received and weighed his evidence at the hearing and on appeal. But as this court has explained, "a fact-finder is always obliged to decide what evidence is or is not relevant and is further entitled to decide what probative weight, if any, should be accorded to relevant evidence." Vega, 2004 WL 3334816, at *6 (emphasis in original). Doe's arguments amount to little more than an attempt to relitigate the merits of his case before this court,

19

and "[i]t is not the province of this Court 'to retry' plaintiff's disciplinary proceeding."
Doe v. Maryland, 2021 WL 1174707, at *26–27 (D. Md. Mar. 29, 2021) (citing Doe v.
Univ. of the S., 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009)).  "While courts have not
hesitated to require the setting aside of [unconstitutional] school board action . . . , [i]t is
not the role of the federal courts to set aside decisions of school administrators which the
court may view as lacking a basis in wisdom or compassion,' or because of mistake."
Shaw v. Bd. of Trs. of Frederick Cmty. Coll., 549 F.2d 929, 932 (4th Cir. 1976) (quoting
Wood v. Strickland, 420 U.S. 308, 326 (1975)).

Doe's case that he was deprived of procedural due process rights would have been
bolstered if he had pleaded some violation of the school's own written policies or
guidelines, which other courts have found may constitute evidence of due process
violations.  See Jones v. Bd. of Governors of Univ. of N.C., 704 F.2d 713, 717 (4th Cir.
1983) (noting that while the source of procedural guarantees is found solely in the due
process clause, it is well recognized that significant departures from state procedures may
evince procedural due process violations).  But he does not.  As such, Doe's procedural
due process claim more closely resembles those in a line of cases that dismissed
complaints at the motion to dismiss stage for failure to allege sufficient facts beyond the
mere allegations that a tribunal reached an erroneous decision.  For example, in Doe v.
Maryland, the District of Maryland granted a motion to dismiss a Title IX claim, relying
on procedural due process grounds as well, where the complaint alleged that the hearing
"constituted a flawed proceeding" because (1) the plaintiff was denied the opportunity to
cross-examine her accuser, (2) the school did not conduct separate investigations and
adjudications, and (3) the school supposedly overlooked certain evidence, thus showing

20

that the accuser was "treated differently than her."  2021 WL 1174707, at *26–27.

Similarly, in <u>Doe v. Virginia Polytechnic Institute & State University</u>, the Western

District of Virginia granted a motion to dismiss the plaintiff's procedural due process

claim where the complaint merely "criticize[d] the procedure" for "limiting [the

plaintiff's] questioning" and complained that "the decision was made based on a

preponderance of the evidence standard."  400 F. Supp. 3d 479, 501 (W.D. Va. 2019).

Like those cases, here, Doe's claims do not pass muster.

       To summarize, the court rejects defendants' argument that the complaint fails to

seek prospective relief against the proper state officials under <u>Ex parte Young</u>.  However,

the court nevertheless grants the motion to dismiss the individual defendants because

even in the light most favorable to Doe, the complaint's allegations do not reflect a

plausible procedural due process violation against those defendants.

### C.  Motion to Dismiss The Citadel

       Defendants also move to dismiss Doe's second cause of action, which asserts a

Title IX claim against The Citadel.  Title IX provides that no person "shall, on the basis

of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance."  20 U.S.C. § 1681(a).  "A Title IX plaintiff may pursue a private cause of

action against—and obtain damages from—a 'funding recipient [that] engages in

intentional conduct that violates the clear terms of the statute.'"  <u>Doe 2</u>, 832 F. App'x at

804 (quoting <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 642 (1999)) (alteration

in original).  Here, it is undisputed that The Citadel receives federal funding and that Doe

was "excluded from participation in [or] denied the benefits of . . . [an] education

program" when The Citadel dismissed him with leave to reapply in a year and revoked

his scholarship. 20 U.S.C. § 1681(a). Thus, the issue presented here is whether The

Citadel discriminated against Doe "on the basis of sex." Id.

The circuit courts are split on the proper framework to apply to Title IX claims

regarding higher-education disciplinary proceedings. Until very recently, the Fourth

Circuit had not directly weighed in, although it had previously acknowledged the two-

theory framework articulated by the Second Circuit in Yusuf v. Vassar College, 35 F.3d

709, 715 (2d Cir. 1994). See Doe 2, 832 F. App'x at 802, 804 (4th Cir. 2020)

(recognizing Yusuf). Under that framework, a plaintiff may attempt to recover on his or

her sex discrimination claim under either an erroneous outcome theory or a selective

enforcement theory. Id. at 804. However, in Sheppard v. Visitors of Virginia State

University, the Fourth Circuit explicitly rejected Yusuf, reasoning that the Yusuf

framework went beyond the plain text of Title IX. 993 F.3d 230, 236 (4th Cir. 2021).[6]

Instead, the Fourth Circuit explained that in order for a plaintiff to state a plausible claim

for relief under Title IX, he must allege facts that, if true, would "raise a plausible

inference that the university discriminated against [the student] on the basis of sex." Id.

(quoting Doe v. Purdue Univ., 928 F.3d 652, 667 (7th Cir. 2019)) (alteration in original).

Inherent in that approach "is a requirement that a Title IX plaintiff adequately plead

causation—that is, a causal link between the student's sex and the university's challenged

_____

[6] In departing from Yusuf, however, the court emphasized that Yusuf's categories
described ways a party could allege discrimination on the basis of sex, and it found "no
inherent problems with the erroneous outcome and selective enforcement theories
identified in Yusuf." Id. Thus, pre-Sheppard cases from within the Fourth Circuit are
still relevant to the extent that they decided whether certain arguments made under those
theories were credible.

disciplinary proceeding." Id.  "Not just any causal link will suffice"; the language of

Title IX requires "but-for" causation.  Id. (collecting cases).

The complaint, as well as Doe's response to the motion to dismiss, alleges that as

a "backdrop" to his claims, the court ought to take note of the 2011 Dear Colleague

Letter issued by the United States Department of Education to colleges and universities

("Dear Colleague Letter").  ECF No. 13 at 29.  The Dear Colleague Letter has been cited

by other similarly-situated plaintiffs as a way of arguing that public universities were

financially motivated to discriminate against male students in sexual assault

investigations.  The Seventh Circuit summarized the Dear Colleague Letter as follows:

> That letter ushered in a more rigorous approach to campus sexual
> misconduct allegations by, among other things, defining "sexual
> harassment" more broadly than in comparable contexts, mandating that
> schools prioritize the investigation and resolution of harassment claims, and
> requiring them to adopt a lenient "more likely than not" burden of proof
> when adjudicating claims against alleged perpetrators.  The Department of
> Education made clear that it took the letter and its enforcement very
> seriously . . . . [a]nd it warned schools that "[t]his Administration is
> committed to using all its tools to ensure that all schools comply with [T]itle
> IX so campuses will be safer for students across the country."  In other
> words, a school's federal funding was at risk if it could not show that it was
> vigorously investigating and punishing sexual misconduct.

Purdue Univ., 928 F.3d at 668 (citations omitted).  Doe, like other similarly-situated

plaintiffs, claims that the Dear Colleague Letter provides "a backdrop story [for] why a

school may be motivated to discriminate against males."  ECF No. 13 at 29.  In response,

defendants argue, in part, that the Dear Colleague Letter was rescinded in 2017, meaning

that it did not have any effect when Jane Roe filed her complaint against Doe in October

2019.  Defendants' position is supported by two district court rulings from outside of this

circuit,[7] but here, the complaint specifically alleges that the Dear Colleague Letter improperly pressured The Citadel to adopt procedures that "do not afford fundamental fairness" to the accused, and that The Citadel has continued to adhere to those unfair procedures. Compl. ¶ 66. Taking the allegations in the complaint as true, and viewing them in the light most favorable to Doe, the court concludes that the Dear Colleague Letter remains relevant to Doe's claims. Nevertheless, while many courts have considered the Dear Colleague Letter as relevant background, courts have uniformly found that it does not, by itself, establish discrimination on the basis of sex. See Purdue Univ., 928 F.3d at 669 ("[T]he letter, standing alone, is obviously not enough to get John over the plausibility line.") (citation omitted); Doe v. Univ. of Denver, 952 F.3d 1182, 1192 (10th Cir. 2020) ("The DCL is gender-neutral on its face, . . . and evidence that a school felt pressured to conform with its guidance cannot alone satisfy Title IX's fundamental requirement that the challenged action be 'on the basis of [gender].'"). Instead, Doe must allege other facts stating that the school acted on the basis of sex in his particular case. See Purdue Univ., 928 F.3d at 669; see also Doe v. Columbia Coll. Chi., 933 F.3d 849, 856 (7th Cir. 2019) ("[H]ere, Doe does not allege the particularized 'something more' that is required to survive a motion to dismiss.").

---

[7] See Doe v. Loyola Univ.-Chi., 2021 WL 2550063, at *7 (N.D. Ill. June 22, 2021) (finding that the background allegations regarding the Dear Colleague Letter were "not a motive for sex-based bias" because "Loyola faced no threat of federal investigation or loss of federal funds in 2020 for failing to adhere to the rescinded 2011 letter."); Mulla v. Univ. of Minn., 2020 WL 603774, at *10 (D. Minn. Feb. 16, 2021) (noting the plaintiff had failed to plead facts suggesting that gender bias motivated the outcome due, in part, to the fact that the Dear Colleague Letter "was not in effect at the time of [the plaintiff's] 2019 suspension and 2020 dismissal").

Doe himself acknowledges that the Dear Colleague Letter is not enough without a particularized "something more."  Accordingly, Doe alleges that The Citadel discriminated against him on the basis of sex in two respects.  First, Doe claims that a gender bias may be inferred from the "clearly irregular" adjudicative process provided to him.  ECF No. 13 at 23.  Under this argument, Doe reiterates his belief that the Board's adjudicative process reflected significant bias in favor of Jane Roe.  In support of his claim, Doe relies heavily on the Seventh Circuit's decision in <u>Doe v. Purdue University</u>, 928 F.3d 652.  According to Doe, the Seventh Circuit found that allegations of adjudicative irregularities, including decision making contrary to the weight of the evidence, could support an inference of gender bias.  But <u>Purdue University</u> is distinguishable and, in fact, illuminates the bar that Doe fails to reach here.  In that case, the court relied on the factual allegation in the complaint that the decision-making committee reached its decision without ever hearing from the accuser via testimony or a written statement.  <u>Id.</u> at 669.  Here, not only did Jane Roe testify, but Doe's representative was allowed to question her.  Compl. ¶ 81.  The Seventh Circuit also noted that the committee "took no other evidence into account."  <u>Purdue Univ.</u>, 928 F.3d at 669.  Specifically, the committee made their decision before reading the investigative report or speaking to the plaintiff, and they refused to hear from the plaintiff's witnesses.  <u>Id.</u>  Here, the Board heard from at least four witnesses to the events and allowed Doe to present character witnesses.  Compl. ¶¶ 80–82.  Indeed, the Board determined that only one of the three incidents that Jane Roe complained of was more likely than not to have occurred, <u>id.</u> ¶ 85, suggesting that it ascribed different consideration and weight to each witness and did not surrender to Doe's "believe the woman" gender-bias theory.

Moreover, Doe's heavy-handed suggestion that the Seventh Circuit's decision in Purdue University provides sufficient authority to permit all complaints in non-Yusuf jurisdictions to proceed to discovery is mistaken. That suggestion is belied by the fact that the Seventh Circuit itself has upheld dismissal of complaints that failed to plead gender discrimination based on allegations of adjudicative irregularities. In Columbia College Chicago, which was decided after Purdue University, the Seventh Circuit dismissed a Title IX claim because it did not allege the "something more" required to survive a motion to dismiss. 933 F.3d at 856. There, the court noted that the plaintiff was given the opportunity to submit evidence, present affidavits signed by witnesses, and submit questions to be asked of Roe on cross-examination. Id. Although the complaint alleged, like here, that "the board's decision was against the weight of the evidence," the court ruled that "this allegation d[id] not imply that the board's decision was based on Doe's gender." Id. Even if the court were to find that Doe has pleaded more facts than what the court in Columbia College Chicago credited, Doe's argument still meets two key pitfalls. First, most of Doe's allegations are "divorced from gender" in that they do not allege how the Board's actions, even if improper, were motivated by gender. Id.; see Doe v. Samford Univ., 29 F.4th 675, 689 (11th Cir. 2022) ("[E]ven if evidence of an investigation and hearing that are inconsistent with ordinary practice may give rise to an inference of bias, . . . there is no reason to suppose that th[e] bias concerned Doe's sex.") (cleaned up). For example, John Doe alleges that the Board deemed it irrelevant that Jane Roe changed the date of the alleged incident to September 2019, but he does not allege that the Board only overlooked the change in testimony because it came from a female accuser or that the Board would not have allowed a male victim to similarly alter

his testimony.  Without more, there can be no plausible inference that Doe's gender was the "but-for" cause of that decision.  See Samford Univ., 29 F.4th at 689 (finding that allegations about Samford's institutionalized procedures favoring victims, taken together with the university's alleged procedural missteps, still did not support a reasonable inference of discrimination on the basis of sex); Columbia Coll. Chi., 933 F.3d at 856 (finding no anti-male bias where the plaintiff failed to allege that the board's decision to restrict his access to documents would have been the same for female victims); Sheppard, 993 F.3d at 237–38 (finding allegations regarding postponement of a female student's proceedings did not suffice to render the plaintiff's claim of discrimination plausible because the complaint did not point to a discriminatory reason for postponing the female student's proceedings).  Second, as the court discussed earlier in the context of procedural due process, Doe makes no allegation that the appeal board was biased, severely undermining his allegations of gender bias in the adjudicative process as a whole.  In Doe v. Samford University, the Eleventh Circuit, after adopting the Seventh Circuit approach and eschewing Yusuf, determined that the complaint was unsuccessful under each of the plaintiff's theories of sex discrimination.  29 F.4th at 687.  Under the plaintiff's theory regarding procedural irregularities, the Eleventh Circuit was not swayed by the plaintiff's argument that the appellate board rejected new evidence presented by the plaintiff.  Id. at 688.  As the court reasoned, the plaintiff failed to allege that the appellate board's decision to not consider the evidence was improper under the university's Title IX policy and that even if it had so alleged, such a fact did not support a reasonable inference that the appellate board acted on the basis of sex.  Id.  Likewise, Doe's allegations regarding the appeal decision are solely based on the appeal board

supposedly ignoring Doe's new evidence and his arguments about a biased

Commandant's Board.  Compl. ¶ 87.  But like claims alleging violations of procedural

due process, "Title IX is not an invitation for courts to second-guess disciplinary

decisions of colleges or universities."  Doe v. Univ. of St. Thomas, 240 F. Supp. 3d 984,

989–90 (D. Minn. 2017).  The court concludes that like in Columbia College Chicago,

Sheppard, and Samford University, Doe's allegations do not get him over the plausibility

line for pleading a cognizable Title IX claim.

Second, Doe claims that sex discrimination can be shown through a "believe the

woman" gender bias.  ECF No. 13 at 24.  But this allegation, too, does not evince a

gender bias.  As a court in this district has explained,

> Simply put, this is not different treatment for similarly situated students on
> the basis of gender.  Plaintiff and Jane Roe were not similarly situated.
> Plaintiff was an alleged sexual assailant and Jane Roe was an alleged victim.
> This obvious difference is a legitimate basis for a different approach in
> support.

Doe v. Coastal Carolina Univ., 522 F. Supp. 3d 173, 181 (D.S.C. 2021).  Doe responds to

defendants' argument in this same vein by citing statistics indicating that the vast

majority of sexual misconduct complainants are female while the vast majority of those

accused are male.  In doing so, Doe argues that "the reality in the context of campus

sexual misconduct proceedings is that the 'victim' is the woman.'"  ECF No. 13 at 26.

But the court in Coastal Carolina contemplated this exact argument, noting that "[c]ourts

across the country and within this circuit refuse to infer gender bias based on statistical

disparity."  Id. at 180 (collecting cases).  Like the Dear Colleague Letter, statistics "may

provide context" when combined with other circumstantial evidence of gender bias, id.,

but as discussed above, the complaint lacks other well-pled allegations that would allow

the court to infer gender bias.  Doe then argues that at the motion to dismiss stage, it

would be premature for the court to write off the statistics presented in the complaint. However, the court does not read Coastal Carolina's reasoning as only applicable to controversies that reach the motion for summary judgment stage.  The Eleventh Circuit reviewed a case decided upon a motion to dismiss and similarly concluded that statistics alone do not alter the plausibility of a Title IX claim.  Samford Univ., 29 F.4th at 692.  As the court in Samford University explained, it must assume that the statistical allegations are true, but any further allegation that attempts to explain that the results are due to sex discrimination—as opposed to other "obvious alternative explanation[s]" such as "inexperience, ineptitude, and sex-neutral pro-complainant bias"—becomes a mere conclusion that the court need not assume true.  See id.  Put another way, the court accepts the complaint's allegation here as true that ninety-nine percent of students accused of sexual assault are male.  See Compl. ¶ 37.  Even so, that statistic does not lead the court to conclude that the Citadel's decision regarding Doe was motivated by gender because regardless of all the other cases that may have been investigated and heard at The Citadel and around the country, there are no additional allegations that lead the court to infer that the decision regarding Doe was not gender neutral.

In sum, even construing Doe's complaint as true, Doe has failed to plead facts sufficient to give rise to a plausible inference that Doe's gender was the "but-for" cause of the alleged administrative deficiencies at his disciplinary hearing and of the school's decision.  Thus, the court finds no plausible inference that Doe was discriminated against on the basis of sex and dismisses Doe's Title IX claim.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss in its

entirety and with prejudice.[8]

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 18, 2022**
**Charleston, South Carolina**

---

[8] Since the court did not dismiss the action based upon Eleventh Amendment immunity, it finds that dismissal with prejudice is appropriate.  See Hong Tang v. Univ. of Baltimore, 782 F. App'x 254, 255 (4th Cir. 2019) (noting that a dismissal based upon Eleventh Amendment immunity is without prejudice but a dismissal for failure to state a claim is presumed to be with prejudice).

30