UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1843

JOHN DOE,

      Plaintiff - Appellant,

  v.

THE CITADEL, The Military College of South Carolina; GLENN M. WALTERS, in his official capacity at The Citadel; VALERIE MERCADO, in her official capacity at The Citadel; JANET SHEALY, in her official capacity at The Citadel,

      Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:21-cv-04198-DCN)

Submitted:  February 9, 2023             Decided:  June 12, 2023

Before KING and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Philip A. Byler, PHILIP A. BYLER, ESQ., Huntington, New York, for Appellant.  M. Dawes Cooke, Jr., John W. Fletcher, BARNWELL WHALEY PATTERSON & HELMS, LLC, Charleston, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellant John Doe was expelled from Defendant-Appellee The Citadel, the Military College of South Carolina ("The Citadel"), for alleged sexual misconduct. He subsequently sued The Citadel and several of its officials—Defendants-Appellees Glenn M. Walters, the school's president; Valerie Mercado, the school's Title IX coordinator; and Janet Shealy, the director of Cadet Advocacy, Response, and Education (CARE), the school's sexual assault center (collectively, "Appellees"). In his complaint, he brought a claim under 42 U.S.C. § 1983 against Walters, Mercado, and Shealy (collectively, "the administrative defendants"), alleging a violation of his Fourteenth Amendment right to procedural due process, as well as a claim against The Citadel, alleging sex discrimination under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681–88. He now asks us to reverse and remand the district court's grant of Appellees' motion to dismiss these claims. For the reasons that follow, we affirm.

I.

Doe attended The Citadel, a state-incorporated military college, on a Marine scholarship. On October 8, 2019, Doe's classmate, Jane Roe, filed a complaint with The Citadel, accusing Doe of three incidents of sexual misconduct. Doe denied these accusations. The complaint was referred to and heard by a Commandant's Board (the Board) at the school. On December 18, 2019, the Board ultimately found a violation as to one of the three alleged incidents, deciding that "it was more likely than not that [Doe] committed an act of sexual violence in non-consensual physical contact of a sexual nature

2

by rubbing his front side against the backside of [Roe] at the Law Barracks Sally Port."
J.A. 8. Consequently, Doe lost his scholarship and was dismissed from The Citadel with leave to apply for possible readmission after one year. Doe appealed this decision to a separate tribunal and sought to present new testimony. On February 3, 2020, that tribunal "denied" his appeal. J.A. 8. Doe then sued Appellees, alleging that the administrative defendants violated his Fourteenth Amendment right to procedural due process and that The Citadel discriminated against him on the basis of sex. Appellees filed a motion to dismiss the complaint for failure to state a claim, which the district court granted. Doe timely appealed.

II.

We review de novo the grant of a motion to dismiss. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). We "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). "To survive a motion to dismiss, the complaint's factual allegations must be enough to raise a right to relief above the speculative level—that is, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *King*, 825 F.3d at 214 (cleaned up).

3

III.

A.

Doe first challenges the district court's dismissal of his procedural due process claim against the administrative defendants. To establish a procedural due process violation, a plaintiff must show "deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (cleaned up). Both the Supreme Court and this Court have assumed without deciding that university students possess a "constitutionally protectible property right in their continued enrollment" at a university. *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) (simplified); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021).

The amount of process due depends on the nature of the interests at stake. *Goss v. Lopez*, 419 U.S. 565, 575–76 (1975). In the educational context, due process requires that a student facing suspension for ten days or less due to disciplinary reasons "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. Neither we nor the Supreme Court have expanded upon precise requirements for longer-term school suspensions or expulsions imposed due to disciplinary misconduct. But we have noted that "the requirements of due process [in the educational context] may be satisfied by something less than a trial-like proceeding," *Henson v. Honor Comm. of the Univ. of Va.*, 719 F.2d 69, 74 (1983) (citing *Goss*, 419 U.S. at 579), and that "[w]hen a school takes serious disciplinary action against a student, generally the student must be

4

offered notice and an opportunity to be heard," *Brown v. Rectors & Visitors of the Univ. of Va.*, 361 F. App'x 531, 532 (4th Cir. 2010) (per curiam) (citing *Goss*, 419 U.S. at 579).

In light of this background, we hold that the administrative defendants afforded Doe adequate due process. Doe did not allege that he was provided inadequate notice of the charges or the Board hearing. He was permitted to present a statement and testimony, call witnesses (including character witnesses), and be accompanied by a representative—all safeguards that we have consistently held satisfy due process. *See, e.g.*, *Doe v. Loh*, 767 F. App'x 489, 490–91 (4th Cir. 2019) (per curiam); *Henson*, 719 F.2d at 73–75; *Vega v. Saleeby*, No. C.A. 2:04–0023–18, 2004 WL 3334816, at *5–7 (D.S.C. July 12, 2004), *aff'd*, 126 F. App'x 626 (4th Cir. 2005) (per curiam).

Doe contends that the district court overlooked his allegations demonstrating that the Board harbored a bias against him. He highlights that Shealy provided Roe with support and assistance during the Board hearing, but Shealy did not do the same for him. However, he never alleged that he was not permitted to seek similar support and assistance for himself. In fact, he alleged that his "representative" accompanied him to the hearing and was given the opportunity to cross-examine Roe. J.A. 32. Doe also takes issue with "Commander Adcock" serving as the recorder for the Board during the hearing because he was Roe's "Battalion TAC Officer" during the 2018–19 school year. Opening Br. 9. But he alleged nothing to suggest that the involvement of Commander Adcock—who was a non-voting Board member—biased the Board against him. *See* J.A. 34. Doe further impugns the Board for stopping his representative's cross-examination of Roe about her "false memory." Opening Br. at 27. But Doe, in the academic context, is not entitled to

5

the same rights as a criminal defendant. We have not found a "basis in the law . . . for importing [the right to cross-examination] into the academic context," and we decline to do so here. *Butler v. Rector & Bd. of Visitors of Coll. of William and Mary*, 121 F. App'x 515, 520 (4th Cir. 2005) (per curiam).

Additionally, Doe argues that his appeal to a separate tribunal at The Citadel did not cure the perceived problems stemming from the Board's alleged bias against him. However, his complaint did not name the members of the appeals tribunal or identify any defects in its decision-making. Instead, the complaint notes that he took an appeal and sought to present new evidence. It also describes the tribunal's reasons for denying his appeal and concludes that "[t]he stated grounds for denying [Doe's] appeal were without merit." J.A. 34. These bare and conclusory allegations do not support Doe's claim that he was denied due process. Thus, the district court properly rejected Doe's allegations of bias.

Doe also challenges the Board's decision as arbitrary and capricious, arguing that it improperly afforded Roe's evidence more weight than his own. He highlights that Roe changed the alleged date of the incident from October 2019 to September 2019—when video surveillance footage was not available to confirm a date—and that he presented evidence suggesting that he was elsewhere at the time of the incident for which he was found responsible. These assertions challenge the Board's ultimate decision on the merits, not its procedure. The district court aptly recognized this shortcoming and properly dismissed the procedural due process claim.

Finally, Doe argues that because his case involves allegations of sexual misconduct, he was due greater procedural protections than those that respondents would receive in

6

2:21-cv-04198-DCN    Date Filed 06/12/23    Entry Number 31    Page 7 of 9

other conduct-related proceedings. But he cites no case law to support that proposition. The two out-of-circuit cases upon which he relies merely recognize the long-standing principle that allegations of disciplinary misconduct implicate weightier private interests than allegations of academic misconduct, and therefore require more procedural safeguards. Opening Br. at 20 (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017); *Doe v. Miami*, 882 F.3d 579, 599–600 (6th Cir. 2018)); *see also Horowitz*, 435 U.S. at 86. These cases did not require the administrative defendants to afford Doe more protection because the allegations against him involved sexual harassment. For these reasons, we affirm the dismissal of the procedural due process claim against the administrative defendants.*

B.

Doe further argues that the district court erred in dismissing his Title IX claim against the Citadel. Title IX prohibits federally supported educational institutions from discriminating on the basis of sex. *Sheppard*, 993 F.3d at 234 (citing 20 U.S.C. § 1681(a)). To state a claim for relief under Title IX, a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against [him] on the basis of sex." *Id.* at 235 (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). Importantly, the plaintiff must plead facts showing that his sex was the but-for cause of the challenged

---

* Because we affirm the district court's dismissal of the procedural due process claim for failure to state a claim, we do not reach the administrative defendants' alternative bases for affirmance regarding the *Ex Parte Young* doctrine and the policy-or-custom standard.

university action. *Id.* at 236.

In this claim, Doe reiterates his criticisms of The Citadel's process for adjudicating the complaint against him, arguing that the perceived procedural "irregularities" discussed above, and the Board's eventual decision to expel him, raise an inference of sex discrimination. Opening Br. 37 (citations omitted). But as discussed above, Doe's allegations demonstrate that he benefited from ample procedural safeguards. He does not dispute that he received notice of the complaint and of the hearing. The Citadel permitted him to present a statement and testimony, call witnesses, be accompanied by a representative, and appeal to a separate tribunal. Moreover, even if The Citadel's treatment of Doe in the Title IX process was improper, he did not allege facts demonstrating that his sex was the but-for cause of any mistreatment. *Sheppard*, 993 F.3d at 236.

Doe contends that The Citadel displayed a so-called "'Believe [t]he Woman' gender bias" against him. Opening Br. at 44. He emphasizes the fact that women comprise the majority of complainants in university Title IX proceedings, while most respondents are men. However, these general statistics alone do not indicate discrimination or bias against men, as other reasons unrelated to bias may explain the disparity. *See, e.g.*, *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 91–92 (1st Cir. 2018). Nor do these statistics compel the conclusion that The Citadel, *in Doe's particular case*, engaged in sex discrimination. *See Sheppard*, 993 F.3d at 236. Indeed, as discussed previously, Doe failed to allege any facts beyond these statistics that would suggest that he experienced such particularized discrimination.

Similarly, Doe emphasizes the April 2011 "Dear Colleague Letter" issued by the

Office for Civil Rights (OCR) of the United States Department of Education, which tied federal funding for school districts, colleges, and universities to compliance with particular requirements for handling sexual harassment and sexual violence on campus. U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., Dear Colleague Letter (2011) (saved as ECF opinion attachment). But again, Doe did not plead facts that would connect the letter to any sex discrimination *in his case*. *See Sheppard*, 993 F.3d at 236. For these reasons, the district court correctly found that Doe failed to state a plausible Title IX claim against The Citadel.

IV.

For the foregoing reasons, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us, and argument would not aid the decisional process.

*AFFIRMED*